**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY**

**KC TRANSPORT, INC.,
d/b/a KC TRANSPORT OF WEST
VIRGINIA, INC., LYNN COMPTON
and EDDIE COMPTON,**

        **Plaintiffs,**

**v.**                                **CIVIL ACTION NO.: 2:18-cv-00005**

**LM INSURANCE CORPORATION;
BB&T INSURANCE SERVICES, INC.; and
SELECTIVE INSURANCE COMPANY OF
AMERICA;**

        **Defendants.**

## AMENDED COMPLAINT

Come now Plaintiffs KC Transport, Inc. [hereinafter "KC Transport"]; Lynn Compton; and Eddie Compton [hereinafter "Compton"], by and through their counsel Stephen P. New, Amanda J. Taylor, and S. Douglas Adkins, and for their Amended Complaint against LM Insurance Corporation [hereinafter "LM Insurance"]; BB&T Insurance Services, Inc. [hereinafter "BB&T"]; and Selective Insurance Company of America [hereinafter "Selective"] allege and state as follows:

## PARTIES

1.     Plaintiff KC Transport is a foreign corporation that is and was at all times relevant hereto conducting business in Mingo County, West Virginia.

2.     Plaintiff Lynn Compton is and was at all times relevant hereto the President of KC Transport.

3.     Plaintiff Eddie Compton is and was at all times relevant hereto a foreman and

1

employee of KC Transport.

4.     Defendant LM Insurance is and was at all times relevant hereto an insurance company that is and was conducting business in Mingo County, West Virginia, and more specifically issuing insurance policies to West Virginia residents and insuring risks in West Virginia.

5.     Defendant BB&T is and was at all times relevant hereto an insurance agency that is and was at all times relevant hereto conducting business in Mingo County, West Virginia, and more specifically issuing insurance policies to West Virginia residents and insuring risks in West Virginia.

6.     Defendant Selective is and was at all times relevant hereto an insurance company that is and was conducting business in Mingo County, West Virginia, and more specifically issuing insurance policies to West Virginia Residents and insuring risks in West Virginia.

7.     The "Claims", as referenced herein, shall include: (a) the workers' compensation claims of Dan Kinder; Bobby Randall Steele; Kevin Christian; and Chett Cline; (2) the claims for a defense and indemnification made by Plaintiffs arising from the civil actions filed by Dan Kinder and Bobby Randall Steele; and (3) the claims for a defense and indemnification by Plaintiffs for the cross-claims filed by Hampden Coal, LLC, and/or Blackhawk Mining, LLC.

## JURISDICTION AND VENUE

8.     Jurisdiction and venue are proper in the United States District Court for the Southern District of West Virginia at Beckley.

## FACTS

9.     KC Transport and Compton are insureds under that certain workers' compensation

and employer's liability insurance policy issued by LM Insurance initially written as Policy No. WC5-35S-540918-014 [the "LM Policy"] for the period of May 1, 2014, to May 1, 2015.

10.     LM Insurance did not issue the actual policy until May 28, 2014.

11.     The LM Policy renewed as Policy No. WC5-35S-5409-015 for the period of May 1, 2015, to May 1, 2016.

12.     The original insurance application submitted to LM Insurance from KC Transport indicated that its employees traveled out of state to both West Virginia and Tennessee.

13.     The original insurance application from KC Transport also listed at least four (4) drivers, each identified as West Virginia residents: Dan Kinder; Bobby Randall Steele; Kevin Christian; and Chet Cline.

14.     In December 2014, KC provided its Coal Haulage Agreement with Hampden Coal, LLC, to both BB&T and LM Insurance, giving both BB&T and LM Insurance notice and actual knowledge that KC Transport was conducting operations in West Virginia pursuant to a contract with Hampden.

15.     KC Transport utilized the services of Defendant BB&T to obtain the aforesaid policy.

16.     BB&T sold the aforesaid policy on behalf of LM Insurance to KC Transport.

17.     BB&T offered and/or assumed the duty to procure, for compensation, insurance from LM Insurance for KC Transport.

18.     KC Transport reasonably informed, expected and/or reasonably relied upon BB&T to procure insurance coverage to protect KC Transport from liabilities associated with its business including, but not limited to, workers' compensation in all states where KC Transport was conducting operations and employment practices liability insurance coverage as part of the

3

aforesaid policy or otherwise.

19.     LM Insurance contends that BB&T failed to obtain West Virginia Workers' Compensation coverage for KC Transport.

20.     BB&T failed to procure the agreed-upon insurance and, in doing so, failed to exercise reasonable care and diligence.

21.     On or about June 22, 2015, an audit was conducted of KC Transport's West Virginia location by LM Insurance, its agent or contractor.

22.     LM Insurance's audit conducted revealed that KC Transport had several employees, including Dan Kinder; Bobby Steele; Chet Cline; and Kevin Christian, who worked in West Virginia, and KC Transport provided documentation confirming the West Virginia payroll, taxes, and coal haulage.

23.     LM Insurance's audit also confirmed the extensive nature of KC Transport's coal haul in West Virginia.

24.     The aforesaid coal hauling agreement contained an indemnification or hold harmless provision in favor of Hampden Coal, LLC ["Hampden Coal"]; Blackhawk Mining, LLC ["Blackhawk Mining"]; or their subsidiaries, parents, and/or affiliates.

25.     KC Transport informed LM Insurance and/or BB&T of its desire to have insurance coverage for all of their operations, including those in both West Virginia and Virginia, and LM Insurance and/or BB&T assumed the duty to provide and/or obtain such insurance coverage for KC Transport.

26.     KC Transport informed LM Insurance and/or BB&T of its desire to have insurance coverage for Hampden Coal and/or Blackhawk Mining as an additional insured and/or for the contractual obligations owed by KC Transport to each of those companies.

27.     KC Transport had a reasonable expectation that the LM Policy would cover its operations in Virginia and West Virginia.

28.     KC Transport had a reasonable expectation that the LM Policy would provide coverage for Hampden Coal and/or Blackhawk Mining as an additional insured and/or for the contractual obligations owed by KC Transport to each of those companies.

29.     At least by the time the aforesaid audit was conducted, LM Insurance had actual knowledge of the West Virginia risk.

30.     At the time the aforesaid policy was actually issued to KC Transport on May 28, 2014, it contained a Residual Market Limited Other States Endorsement.

31.     The Residual Market Limited Other States Endorsement was not made conspicuous, plain and clear as of the May 1, 2014, the effective date of the aforesaid policy.

32.     KC Transport and Compton are insureds under that certain commercial general liability insurance policy issued by Selective as Policy No. S2112567 [the "Selective Policy"] for the period of April 22, 2015, to April 22, 2016.

33.     The Selective Policy included Commercial General Liability Coverage as well as Commercial Umbrella Coverage.

34.     The Selective Policy's Commercial General Liability Coverage provides coverage for the Kinder and Steele Claims.

35.     The Selective Policy's Commercial Umbrella Coverage provides coverage for the Kinder and Steele Claims.

36.     KC Transport informed Selective and/or BB&T of its desire to have insurance coverage for all of their operations, including coverage for Hampden Coal and/or Blackhawk Mining as an additional insured and/or for the contractual obligations owed by KC Transport to

each of those companies.

37.     KC Transport had a reasonable expectation that the Selective Policy would provide coverage for its operations, as well coverage for Hampden and/or Blackhawk as an additional insured and/or for contractual obligations owed by KC Transport to each of those companies.

38.     Selective declined to defend or indemnify KC Transport, Hampden Coal and/or Blackhawk Mining in the Kinder and Steele matters.

39.     Upon information and belief, Selective contends that Hampden and/or Blackhawk is not an additional insured under the Selective Policy.

40.     At all times relevant hereto, BB&T Insurance Services, Inc., was acting as an agent or apparent agent of Selective and/or LM Insurance.

<u>**DAN KINDER CLAIMS**</u>

41.     In Civil Action No. 15-C-189, filed in the Circuit Court of Mingo County, Dan Kinder alleges that on or about August 8, 2015, he sustained an injury in the course of and resulting from his employment with KC Transport.

42.     In October 2015, LM Insurance denied Plaintiff Kinder's claim for Workers' Compensation benefits.

43.     LM Insurance's denial resulted in damages to KC Transport and its principals, including President Lynn Compton, including, but not limited to, uninsured claims charges, fines, liens, and exposure to negligence claims.

44.     On or about November 2, 2015, the Plaintiff Kinder filed his Complaint against KC Transport, Eddie Compton, and Hampden Coal.

45.     On or about December 2, 2015, counsel for KC Transport and Compton answered the Plaintiff's Complaint.

46.     On or about September 12, 2016, Dan Kinder filed an Amended Complaint in Civil Action No. 15-C-189, adding a Negligence claim against Plaintiff KC Transport.

47.     On or about October 3, 2016, Hampden Coal, LLC, filed a cross-claim against KC Transport in the Kinder civil action.

48.     Plaintiffs have tendered this matter to LM Insurance for a defense and indemnification.

49.     LM Insurance unlawfully and in breach of its contractual and other duties, refused and continues to refuse to provide a defense for KC Transport and/or Compton for the allegations contained in the Kinder Complaint.

50.     LM Insurance has also unlawfully and in breach of its contractual and other duties refused and continues to refuse to provide indemnification for KC Transport and/or Compton for the allegations contained in the Kinder Complaint.

51.     LM Insurance has also unlawfully and in breach of its contractual and other duties, refused and continues to refuse to provide defense and/or indemnification to KC Transport regarding Hampden Coal, LLC's, crossclaim against KC Transport or otherwise defend and/or indemnify Hampden Coal, LLC, regarding the Kinder claim.

52.     On April 26, 2017, Plaintiffs tendered the Kinder matter to Selective for a defense and indemnification.

53.     On May 10, 2017, Selective denied coverage for the Kinder claims.

54.     Selective unlawfully and in breach of its contractual and other duties, refused and continues to refuse to provide a defense to KC Transport and/or Compton for the allegations contained in the Kinder Complaint.

55.     Selective has also unlawfully and in breach of its contractual and other duties

7

refused and continues to refuse to provide indemnification to KC Transport and/or Compton for the allegations contained in the Complaint.

56.     Selective has also unlawfully and in breach of its contractual and other duties, refused and continues to refuse to provide defense and/or indemnification to KC Transport regarding Hampden Coal, LLC's, crossclaim against KC Transport or otherwise defend and/or indemnify Hampden Coal, LLC, regarding the Kinder Claim.

57.     Selective has unlawfully and in breach of its contractual and other duties refused to defend or indemnify KC Transport, Hampden Coal, and/or Blackhawk Mining under the Selective Umbrella Policy despite not having denied coverage.

## BOBBY STEELE CLAIMS

58.     In Civil Action No. 16-C-127, filed in the Circuit Court of Mingo County, Bobby Randall Steele alleges that on or about February 4, 2016, he sustained an injury in the course of and resulting from his employment with KC Transport.

59.     LM Insurance denied Bobby Steele's Workers' Compensation claim.

60.     LM Insurance's denial resulted in damages to KC Transport including, but not limited to, uninsured claims charges, fines, liens, and exposure to negligence claims.

61.     On or about July 14, 2016, the Plaintiff Steele filed his Complaint against KC Transport and Blackhawk Mining.

62.     The Steele Complaint included a count for negligence against Plaintiff KC Transport.

63.     On or about August 15, 2016, counsel for KC Transport answered the Steele Complaint.

64.     On August 15, 2016, KC Transport tendered this matter to LM Insurance for a

8

defense and indemnification.

65.     Having had no response, Plaintiffs again tendered the Steele matter to LM Insurance on November 2, 2016.

66.     On November 16, 2016, LM Insurance denied coverage and indemnification to Plaintiff KC Transport.

67.     LM Insurance unlawfully and in breach of its contractual and other duties, refused and continues to refuse to provide a defense for KC Transport for the allegations contained in the Steele Complaint

68.     LM Insurance has also unlawfully and in breach of its contractual and other duties refused and continues to refuse to provide indemnification for KC Transport for the allegations contained in the Steele Complaint

69.     On May 16, 2017 Plaintiffs tendered the Steele matter to Selective for a defense and indemnification.

70.     On June 2, 2017, Selective sent a letter dated August 24, 2016, to counsel for KC Transport denying Plaintiffs a defense and/or indemnification for the claims set forth in the Steele Complaint.

71.     Selective unlawfully and in breach of its contractual and other duties, refused and continues to refuse to provide a defense to KC Transport for the allegations contained in the Steele Complaint.

72.     Selective has also unlawfully and in breach of its contractual and other duties refused and continues to refuse to provide indemnification to KC Transport for the allegations contained in the Steele Complaint, or otherwise defend and/or indemnify Blackhawk Mining for the allegations set forth in the Steele Complaint.

9

73.     Selective has unlawfully and in breach of its contractual and other duties refused to defend or indemnify KC Transport, Hampden Coal, and/or Blackhawk Mining under the Selective Umbrella Policy despite not having denied coverage.

## KEVIN CHRISTIAN CLAIMS

74.     Kevin Christian alleges that on or about November 4, 2015, he sustained an injury in the course of and resulting from his employment with KC Transport.

75.     LM Insurance denied Kevin Christian's Workers' Compensation claim.

76.     LM Insurance's denial resulted in damages to KC Transport including, but not limited to, uninsured claims charges, fines, liens, and exposure to negligence claims

## CHET CLINE CLAIMS

77.     Chet Cline alleges that on or about August 22, 2015, he sustained an injury in the course of and resulting from his employment with KC Transport.

78.     LM Insurance denied Chet Cline's Workers' Compensation claim.

79.     LM Insurance's denial resulted in damages to KC Transport including, but not limited to, uninsured claims charges, fines, liens, and exposure to negligence claims

## COUNT I
### Declaratory Judgment – LM Policy

80.     KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim

81.     This action is brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, for a declaration of rights, status and other legal relations as to insurance coverage.

82.     The applicable policy period(s) cover(s) the claims of Dan Kinder; Bobby Randall Steele; Kevin Christian; Chet Cline; and/or KC Transport and Compton's claims made during the

applicable policy period(s) [hereinafter collectively the "Claims"].

83.     KC Transport and Compton have attempted to obtain a defense and/or indemnification through LM Insurance for the Claims.

84.     In the investigation of whether the Claims are claims covered under the aforesaid policy, LM Insurance owed a duty to KC Transport and/or Compton to treat the interests of KC Transport and/or Compton with the same weight that LM Insurance gave to its own interests

85.     By draft letter dated November 10, 205, Liberty Mutual stated that "The policy was issued in Virginia and Virginia is the only state listed on the Information Page for Workers Compensation Insurance. West Virginia is not a covered state for workers compensation."

86.     LM Insurance provided written materials to KC Transport in which LM Insurance made the following representation:

> What to Expect From Us.
>
> We will make policy changes as needed throughout the life of the policy, within 20 days of receiving the appropriate data.

76.     Despite having appropriate data regarding the work being conducted in West Virginia by KC Transport's employees, LM Insurance failed to include West Virginia on Item 3.A. on the policy's Information Page and despite charging KC Transport an additional premium based upon the West Virginia employees.

77.     Thereafter, when the Claims were tendered and presented to LM Insurance for a defense and indemnification, LM Insurance denied coverage because West Virginia was not listed on Item 3.A. on the policy's Information Page.

78.     LM Insurance denied coverage for the Claims despite having actual knowledge that KC Transport had workers in the State of West Virginia and LM Insurance had such knowledge

prior to the date of the injury alleged by Kinder; Steele; Christian; and/or Cline.

79.     LM Insurance has refused and continues to refuse to provide a defense or indemnification for KC Transport regarding the Claims.

80.     A fair and proper reading of the insurance policy, in which LM Insurance gives the interests of its insureds the same weight it provides to its own interests and considering the fact that LM Insurance knew that KC Transport employed Kinder, Steele, Christian, Cline, and other employees working in West Virginia prior to the Claims, requires this Court to determine that the aforesaid policy provided coverage for the Claims.

## COUNT II
### Breach of Contract – LM Insurance

81.     KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim.

82.     The Policy constituted a contract of insurance between KC Transport and LM Insurance.

83.     The Policy provides for coverage for KC Transport and/or Compton for the Claims.

84.     The Policy provides for coverage for KC Transport for the claims asserted against it by Hampden Coal, LLC; Blackhawk; and their subsidiaries, parents, affiliates, and assigns.

85.     LM Insurance breached the insurance contract by denying the Claims for a defense and/or indemnification.

## COUNT III
### Common Law Bad Faith - LM Insurance

86.     KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim.

87.     LM Insurance, as a result of its contractual relationship with KC Transport and its superior bargaining position, owed a duty of good faith and fair dealing to KC Transport to assure that KC Transport received correct and accurate information concerning benefits under the insurance policy and to otherwise receive full benefit of the policy.

88.     LM Insurance also owed a duty to give the interest of it its insured KC Transport the same weight and effect that LM Insurance gave to its own financial and other interests during the investigation, evaluation, and determination of coverage issues involving the Claims.

89.     LM Insurance has acted with actual malice, as defined by the laws of the State of West Virginia, in its actions towards the plaintiff at material times herein including, but not limited to, refusing to provide a defense and indemnification without conducting a reasonable investigation based upon all available information; not giving KC Transport's interests the same weight and respect that it gave to its own financial and other interests during the investigation, evaluation, and determination of coverage issues involving the claims asserted against KC Transport and Compton by the plaintiff Kinder; not attempting in good faith to effectuate prompt, fair and equitable settlement of this coverage dispute in which liability has become reasonable; and, compelling KC Transport and Compton to institute this civil action as a result of LM Insurance's unlawful acts and omissions.

90.     The acts of LM Insurance were done intentionally, maliciously and with a total disregard of the rights of KC Transport and Compton, and such actions violate LM Insurance's common law duty of good faith and fair dealing.

91.     As a direct and proximate result of LM Insurance's "bad faith", KC Transport and Compton have suffered damages.

## COUNT IV

**Violation of West Virginia Unfair Trade Practices Act – LM Insurance**

92.     KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim.

93.     LM Insurance has intentionally, willfully and maliciously denied the aforesaid claims asserted against KC Transport and/or Compton in bad faith, breaching its respective duties of good faith and fair dealing owed to them, all in utter disregard of said LM Insurance's obligations under West Virginia law.

94.     LM Insurance, a foreign corporation and insurer authorized to and doing business in West Virginia, and its agents, employees and/or servants are required to comply with and refrain from violating the unfair trade practices provision of the insurance statutes of West Virginia Code §33-11-4.

95.     LM Insurance, a foreign corporation and insurer authorized to and doing business in West Virginia, and its agents, employees and/or servants are required to comply with and refrain from violating the Insurance Rules and Regulations of West Virginia (Title 114, Legislative Rules), which have the full force and effect of statutory law.

96.     LM Insurance, by its agents, employees and/or servants, has committed and performed, with such frequency as to indicate a general business practice, the following, without limitation:

> \*     Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

> \*     Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

> \*     Refusing to provide a defense and indemnification without conducting a reasonable investigation based upon all available information;

14

*     Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims or coverage disputes in which liability has become reasonably clear;

*     Compelling insureds to institute litigation to recover amounts or coverage due under an insurance policy by unlawfully and in breach of its contractual duties, and deny a defense to its insured for one or more covered claims;

*     Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim;

*     Failing to give the interests of its insureds the same weight and respect that LM Insurance gives its own financial and other interests;

*     Failing to comply with and follow its own or other applicable policies, procedures and guidelines in the investigation, evaluation, and determination of coverage; and,

*     Failing to comply with and follow its own representations to its insured regarding what the insureds may expect from its insurer, LM Insurance.

97.     LM Insurance's violations of the West Virginia Unfair Trade Practices Act have occurred with such frequency as to amount to a general business practice.

98.     As a direct and proximate result of LM Insurance's breach of contract and the defendants' violations of the West Virginia Unfair Trade Practices Act and West Virginia CSR 14-4.1, et seq., KC Transport and Compton have suffered damages.

## COUNT V
### Estoppel – LM Insurance and BB&T

99.     KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim.

100.     LM Insurance and BB&T's had knowledge of KC Transport's business operations in both Virginia and West Virginia, including its contractual obligations.

101.    KC Transport reasonably relied to its detriment on LM Insurance and BB&T's representations and knowledge that KC Transport would have adequate insurance for all of its business operations in both Virginia and West Virginia, including its contractual obligations.

102.    LM Insurance, BB&T or their agents' misrepresentations made at the policy's inception and subsequent thereto resulted in KC Transport being prohibited from procuring the coverage desired.

103.    LM Insurance, BB&T or their agents have acted in bad faith.

104.    KC Transport has been prejudiced by the conduct referenced herein.

## COUNT VI
### Reasonable Expectation – LM Insurance and BB&T

105.    KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim.

106.    KC Transport had an objectively reasonable expectation that the terms of the insurance contract would provide coverage for all of its operations, to include those in Virginia and West Virginia. including its contractual obligations.

107.    LM Insurance's and BB&T's actions and/or inactions have negated KC Transport's reasonable expectations.

108.    KC Transport's reasonable expectations should be honored under the law.

## COUNT VII
### Negligence – BB&T

109.    KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim.

110.    BB&T owed KC Transport a duty to procure the insurance coverage requested and sought by KC Transport.

111.    BB&T breached the aforementioned duty in failing to procure insurance coverage for KC Transport's business operations in West Virginia, including its contractual obligations.

112.    As a direct and proximate result of BB&T's breach of its duty, Plaintiffs have suffered damages.

## COUNT VIII
### Breach Of Contract – BB&T

113.    KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim.

114.    BB&T and KC Transport entered into a contract for the procurement of insurance which would cover KC Transport's operations in both Virginia and West Virginia, including its contractual obligations.

115.    BB&T breached the aforementioned contract by failing to procure the appropriate insurance coverage for KC Transport.

116.    As a direct and proximate result of BB&T's breach, Plaintiffs have suffered damages.

## COUNT IX
### Breach Of Fiduciary Duty – BB&T

117.    KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim.

118.    BB&T had a fiduciary duty to Plaintiff to procure the insurance coverage requested and sought by KC Transport.

119.    BB&T breached the aforementioned duty in failing to procure insurance coverage for KC Transport's business operations in West Virginia, including its contractual obligations.

120.    As a direct and proximate result of BB&T's breach of its duty, Plaintiffs have suffered damages.

## COUNT X
## Failure to Procure – BB&T

121.    KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim.

122.    BB&T agreed to procure, for compensation, insurance from LM Insurance and Selective Insurance for Plaintiffs.

123.    BB&T failed to procure the agreed upon insurance and, in doing so, failed to exercise reasonable care and diligence.

124.    As a direct and proximate result of BB&T's failure to procure, Plaintiffs have suffered damages.

## COUNT XI
## Declaratory Judgment – Selective Policy

125.    KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim.

126.    This action is brought pursuant to the Uniform Declaratory Judgments Act, West Virginia Code §55-3-1 through 16 for a declaration of rights, status and other legal relations as to insurance coverage.

127.    The applicable policy period(s) cover(s) the Kinder and Steele Claims.

128.    KC Transport and Compton have attempted to obtain a defense and/or

indemnification for KC, Hampden, and Blackhawk through Selective for the Claims.

129.    In the investigation of whether the Claims are claims covered under the aforesaid policy, Selective owed a duty to KC Transport and/or Compton to treat the interests of KC Transport, Compton, and/or any additional insureds with the same weight that Selective gave to its own interests

130.    On August 24, 2016, and May 10, 2017, KC Transport and Compton received a letter on Selective letterhead denying both a defense and indemnification for the Steele Claims and Kinder Claims, respectively.

131.    Selective has refused and continues to refuse to provide a defense or indemnification under the Selective Policy's CGL coverage for KC Transport, Hampden, and/or Blackhawk regarding the Kinder and Steele Claims, and has also refused to defend or indemnify KC Transport, Hampden, and/or Blackhawk under the Selective Policy's umbrella coverage, despite not having denied coverage.

132.    A fair and proper reading of the Selective Policy, in which Selective gives the interests of its insureds the same weight it provides to its own interests, requires this Court to determine that the Selective Policy provided coverage for the Kinder and Steele Claims as set forth herein.

## COUNT XII
### Breach Of Contract – Selective Insurance

133.    KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim.

134.    The Selective Policy constituted a contract of insurance between KC Transport and Selective Insurance.

135.    The Selective Policy provides for coverage for KC Transport and/or Compton for the Kinder and Steele Claims.

136.    The Selective Policy provides coverage for Hampden Coal, LLC; Blackhawk, and their subsidiaries, parents, affiliates, and assigns.

137.    The Selective Policy provides for coverage for KC Transport for the claims asserted against it by Hampden Coal, LLC; Blackhawk; and their subsidiaries, parents, affiliates, and assigns.

138.    Selective Insurance breached the insurance contract by denying the Kinder and Steele Claims for a defense and/or indemnification.

## COUNT XIII
### Common Law Bad Faith - Selective Insurance

139.    KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim.

140.    Selective Insurance, as a result of its contractual relationship with KC Transport and its superior bargaining position, owed a duty of good faith and fair dealing to KC Transport to assure that KC Transport received correct and accurate information concerning benefits under the insurance policy and to otherwise receive full benefit of the policy.

141.    Selective Insurance also owed a duty to give the interest of it its insured KC Transport the same weight and effect that Selective Insurance gave to its own financial and other interests during the investigation, evaluation, and determination of coverage issues involving the Claims.

142.    Selective Insurance has acted with actual malice, as defined by the laws of the State of West Virginia, in its actions towards the plaintiff at material times herein including, but not

limited to, refusing to provide a defense and indemnification without conducting a reasonable investigation based upon all available information; not giving KC Transport's interests the same weight and respect that it gave to its own financial and other interests during the investigation, evaluation, and determination of coverage issues involving the claims asserted against KC Transport and Compton by Kinder and Steele; not attempting in good faith to effectuate prompt, fair and equitable settlement of this coverage dispute in which liability has become reasonable; and, compelling KC Transport and Compton to institute this civil action as a result of Selective Insurance's unlawful acts and omissions.

143.    The acts of Selective Insurance were done intentionally, maliciously and with a total disregard of the rights of KC Transport and Compton, and such actions violate Selective Insurance's common law duty of good faith and fair dealing.

144.    As a direct and proximate result of Selective Insurance's "bad faith", KC Transport and Compton have suffered damages.

## COUNT XIV
### Violation of West Virginia Unfair Trade Practices Act – Selective Insurance

145.    KC Transport and Compton reincorporate all of the proceeding paragraphs of the Complaint as if set forth herein verbatim.

146.    Selective Insurance has intentionally, willfully and maliciously denied the aforesaid claims asserted against KC Transport and/or Compton in bad faith, breaching its respective duties of good faith and fair dealing owed to them, all in utter disregard of said Selective Insurance's obligations under West Virginia law.

147.    Selective Insurance, a foreign corporation and insurer authorized to and doing business in West Virginia, and its agents, employees and/or servants are required to  comply with

and refrain from violating the unfair trade practices provision of the insurance statutes of West Virginia Code §33-11-4.

148.    Selective Insurance, a foreign corporation and insurer authorized to and doing business in West Virginia, and its agents, employees and/or servants are required to comply with and refrain from violating the Insurance Rules and Regulations of West Virginia (Title 114, Legislative Rules), which have the full force and effect of statutory law.

149.    Selective Insurance, by its agents, employees and/or servants, has committed and performed, with such frequency as to indicate a general business practice, the following, without limitation:

> \*     Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

> \*     Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

> \*     Refusing to provide a defense and indemnification without conducting a reasonable investigation based upon all available information;

> \*     Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims or coverage disputes in which liability has become reasonably clear;

> \*     Compelling insureds to institute litigation to recover amounts or coverage due under an insurance policy by unlawfully and in breach of its contractual duties, and deny a defense to its insured for one or more covered claims;

> \*     Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim;

> \*     Failing to give the interests of its insureds the same weight and respect that LM Insurance gives its own financial and other interests;

\*  Failing to comply with and follow its own or other applicable policies, procedures and guidelines in the investigation, evaluation, and determination of coverage; and,

\*  Failing to comply with and follow its own representations to its insured regarding what the insureds may expect from its insurer, LM Insurance.

150. Selective Insurance's violations of the West Virginia Unfair Trade Practices Act have occurred with such frequency as to amount to a general business practice.

151. As a direct and proximate result of Selective Insurance's breach of contract and the defendants' violations of the West Virginia Unfair Trade Practices Act and West Virginia CSR 14-4.1, et seq., KC Transport and Compton have suffered damages.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs request the following relief:

(A) Declaratory judgment from this Court finding that there is coverage and that LM Insurance and Selective Insurance owe Plaintiffs a defense and indemnification under the Policy for some or all of the Claims set forth herein;

(B) The available coverage under the Liberty Mutual Policy and the Selective Policy;

(C) All such damages and relief as are available under W.Va. Code § 33-1-1, *et seq*.;

(D) All such other damages and relief as allowable under West Virginia law including, but not limited to *Hayseeds* damages (e.g., attorney fees and expenses, economic loss, annoyance, inconvenience and aggravation) and punitive damages;

(E) Court costs and expenses incurred in this action;

(F) Pre and post judgment interest;

(G) Attorneys' costs and fees; and,

(H) All such other and further relief as this Court deems just and proper.

DEFENDANTS/THIRD-PARTY PLAINTIFFS DEMAND A TRIAL BY JURY.

PLAINTIFFS,

By Counsel

  /s/Amanda J. Taylor_____
Stephen P. New, Esquire (WVSB# 7756)
Amanda J. Taylor, Esquire (WVSB# 11635)
THE LAW OFFICE OF STEPHEN P. NEW
114 Main Street
Post Office Box 5516
Beckley, West Virginia  25801
Telephone: (304) 250-6017
Facsimile:  (304) 250-6012

And

S. Douglas Adkins, Esquire (WVSB# 80)
CYRUS, ADKINS & WALKER
636 Fourth Avenue, Floor 1
Huntington, West Virginia  25701
Telephone: (304) 522-9593
Facsimile:  (304) 522-9596