IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KC TRANSPORT, INC., et al.,

          Plaintiffs,

v.                                 CIVIL ACTION NO.   2:18-cv-00005

LM INSURANCE CORPORATION, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiffs' Motion for Summary Judgment as to Defendant LM Insurance Corp. ("LM Insurance"), (ECF No. 124), Plaintiffs' Partial Motion for Summary Judgment on Counts XI and XII, (ECF No. 126), Defendant Selective Insurance Co. of America's ("Selective") Motion for Summary Judgment, (ECF No. 128), and LM Insurance's Motion for Summary Judgment, (ECF No. 130).[1]  For the reasons discussed more fully herein, the Court **GRANTS** LM Insurance's and Selective's motions for summary judgment.  (ECF Nos. 128, 130.) The Court further **DENIES** Plaintiffs' motions for summary judgment.  (ECF Nos. 124, 126.)

*I.*      *BACKGROUND*

This case arises out of a coverage dispute between KC Transport, Inc. ("KC Transport"), its President, Lynn Compton, and one of its foremen, Eddie Compton, ("Plaintiffs") and their insurance providers, LM Insurance and Selective, and their insurance broker, Defendant BB&T Insurance Services, Inc. ("BB&T").  (*See* ECF No. 66 (Am. Compl.).)  KC Transport purchased insurance

---

[1] Also pending before the Court are Plaintiffs' and Selective's motions to exceed the page limit for their memoranda in support of their respective motions for summary judgment.  (ECF Nos. 122, 123.)  For good cause shown, the Court **GRANTS** these motions.  (ECF Nos. 122, 123.)

policies through BB&T which included a Workers' Compensation and Employers' Liability Policy issued by LM Insurance ("LM Insurance Policy") and a Commercial General Liability Policy issued by Selective ("Selective Insurance Policy").   (*See id.* at 2–3, 5 ¶¶ 9–17, 32.)

A.  *LM Insurance and Selective Insurance Policies*

In 2014, BB&T applied for workers' compensation insurance on behalf of KC Transport through the Virginia assigned risk market.   (*See* ECF No. 130-4 (Insurance Appl.).)   LM subsequently issued the LM Insurance Policy for the period of May 1, 2014 to May 1, 2015.   (*See* ECF No. 66 at 2–3 ¶ 9.)   The policy was subsequently renewed for the period of May 1, 2015 to May 1, 2016.   (*Id.* at 3, ¶ 10.)   Both the original policy and the renewed policy state the following, in relevant part, regarding coverage:

> 3.      Coverage
> A.      Workers Compensation Insurance:   Part One of the policy applies to the Workers Compensation Law of the states listed here:   VA
> . . .
> C.      Other States Insurance:   Part Three of the policy applies to the states, if any, listed here:   REFER TO RESIDUAL MARKET LIMITED OTHER STATES INSURANCE ENDORSEMENT WC 00 03 26A.

(ECF No. 130-6 at 23 (2014 LM Insurance Policy).)   The Residual Market Limited States Insurance Endorsement ("RMLOSIE") states the following in relevant part:

> We will pay promptly when due the benefits required of you by the workers compensation law of any state not listed in 3.A. of the Information Page if all of the following conditions are met:
> a.      The employee claiming benefits was either hired under a contract of employment made in a state listed in Item 3.A. of the information Page; and
> b.      The employee claiming benefits is not claiming benefits in a state where, at the time of injury, (i) you have other workers compensation insurance coverage, or (ii) you were, by virtue of the nature of your operations in that state, required by that state's law to have obtained separate workers compensation insurance coverage, or (iii) you are an authorized self-insurer or participant in a self-insured group plan; and
> c.      The duration of the work being performed by the employee claiming benefits in the state for which that employee is claiming benefits is temporary.

(ECF No. 130-7 at 30.)

On November 22, 2014, KC Transport entered into a Coal Haul Agreement with Hampden Coal, LLC ("Hampden Coal") pursuant to which KC Transport began hauling coal in West Virginia. (*See* ECF No. 66 at 3, ¶ 14.) On October 7, 2015, BB&T submitted a policy change request on behalf of KC Transports to LM Insurance. (*See* ECF No. 130-11 (Acord Commercial Policy Change Req.).) KC Transport paid the additional premium on December 2, 2015, and LM Insurance added coverage for West Virginia to the policy the next day. (*See* ECF No. 139 at 4.)

Through BB&T, KC Transport also purchased the Selective Insurance Policy that was effective from April 22, 2015 to April 22, 2016. This policy included General Liability Coverage and Commercial Umbrella Coverage. (*See* ECF No. 128-1 (Selective Insurance Policy).)

B. *Underlying Claims and Lawsuits Against KC Transport*

In late 2015, Dan Kinder ("Kinder"), an employee of KC Transport, filed for workers' compensation benefits under the West Virginia Workers' Compensation Act ("WCA") for injuries he allegedly sustained while in the course of his employment with KC Transport. (ECF No. 131 at 3.) On October 7, 2015, KC Transport reported Kinder's claim to BB&T and LM Insurance for coverage. (*See* ECF No. 138 at 6.) In a letter dated November 10, 2015, LM Insurance denied coverage for the claim, stating that the policy did not cover West Virginia claims and coverage was not available under the RMLOSIE. (*See* ECF No. 130-9 (Kinder Denial Letter).)

After he was terminated, Kinder filed a complaint against KC Transport, Eddie Compton, and Hampden Coal in the Circuit Court of Mingo County, West Virginia. (ECF No. 66 at 6, ¶¶ 41, 44; ECF No. 130-8 (Kinder Compl.).) On October 3, 2016, Hampden Coal filed a cross claim against KC Transport alleging that KC Transport agreed to defend and indemnify Hampden Coal. (ECF No. 66 at 7, ¶ 47.) Plaintiffs submitted Hampden Coal's claims to LM Insurance. (*See id.*

3

¶¶ 49–51.)   LM Insurance denied coverage.   (*See* ECF No. 126-6 at 7 (Hampden Denial Letter).)

Plaintiffs subsequently submitted all of the above claims to Selective for defense and

indemnification.   (ECF No. 66 at 7, ¶ 52.)   Selective also denied coverage.   (*Id.* ¶ 53, 56–57.)

Another KC Transport employee, Chet Cline ("Cline"), filed for workers' compensation

benefits under the WCA for injuries he allegedly sustained while in the course of his employment

with KC Transport.   (*See id.* at 10, ¶ 77; ECF No. 131 at 3.)   In a letter dated November 13, 2015,

LM Insurance denied Cline's claim, citing the same reasons for denial as it did for denying Kinder's

claims.   (ECF No. 66 ¶ 78; *see also* ECF No. 130-10 (Cline Denial Letter).)

KC Transport employee Kevin Christian ("Christian") also filed a WCA claim for injuries

he allegedly sustained while working for KC Transport.   (*See* ECF No. 66 at 10, ¶ 74.)   In a letter

dated November 30, 2015, LM Insurance denied coverage for Christian's claim for the same

reasons as it denied Kinder's and Cline's claims.   (*See* ECF No. 130-13 (Christian Denial Letter).)

However, LM Insurance noted that KC Transport's request to add West Virginia coverage was still

pending and the additional premium had not been paid.   (*See id.*)

Lastly, KC Transport employee Bobby Steele ("Steele") filed a claim under the WCA for

injuries he allegedly sustained on February 4, 2016, while in the course of his employment with KC

Transport.   (*See* ECF No. 66 at 8, ¶¶ 58–59.)   LM Insurance denied the claim, finding that

Steele's injury did not arise out of or in the course of his employment.   (*See* ECF No. 131 at 4.)

Following his termination, Steele filed a complaint against KC Transport and Blackhawk

Mining in the Circuit Court of Mingo County, West Virginia, alleging claims for negligence and

wrongful termination/retaliatory discharge.   (*See* ECF No. 130-16 (Steele Compl.).)   On August

15, 2016, Plaintiffs submitted Steele's action to LM Insurance for defense and/or indemnification.

(ECF No. 66 at 8–9, ¶ 64.)   On November 16, 2016, LM Insurance denied coverage.   (*Id.* ¶ 66.)

On May 16, 2017, Plaintiffs submitted these claims to Selective for a defense and/or indemnification. (*Id.* ¶ 69.) In a letter dated August 24, 2016, Selective also denied coverage. (*Id.* at 9–10, ¶¶ 70, 73.)

C. *Procedural History*

On January 2, 2018, Plaintiffs filed the present action alleging the following claims against Defendants: Declaratory Judgment on Plaintiffs' insurance policy with LM Insurance (Count I); Breach of Contract against LM Insurance (Count II); Common Law Bad Faith against LM Insurance (Count III); Violation of the West Virginia Unfair Trade Practices Act ("WVUTPA") against LM Insurance (Count IV); Estoppel against LM Insurance and BB&T (Count V); Reasonable Expectation against LM Insurance and BB&T (Count VI); Negligence against BB&T (Count VII); Breach of Contract against BB&T (Count VIII); Breach of Fiduciary Duty against BB&T (Count IX); Failure to Procure against BB&T (Count X); Declaratory Judgment on Plaintiffs' insurance policy with Selective Insurance (Count XI); Breach of Contract against Selective Insurance (Count XII); Common Law Bad Faith against Selective Insurance (Count XIII); and Violations of the WVUTPA against Selective Insurance (Count XIV). (*See* ECF No. 1.)

On April 13, 2018, Selective filed a motion to bifurcate the breach of contract claims from the bad faith claims and to stay further proceedings on the bad faith claims pending resolution of the breach of contract claims, to which LM Insurance and BB&T joined. (*See* ECF No. 31; *see also* ECF Nos. 36, 39.) In an order dated July 30, 2018, this Court granted the motion and stayed further proceedings, including discovery, in connection with the bad faith claims. (ECF No. 65.) The order further stayed Plaintiffs' claims against BB&T. (*See id.*)

On February 22, 2019, Plaintiffs filed their present motions for summary judgment. (ECF No. 124, 126.) Selective and LM Insurance timely responded to Plaintiffs' motions. (ECF Nos.

133, 139.)   Plaintiffs did not file replies.   Selective and LM Insurance subsequently filed their respective motions for summary judgment, (ECF Nos. 128, 130), to which Plaintiffs timely responded, (ECF Nos. 137, 138), and LM Insurance and Selective timely replied, (ECF Nos. 141, 142.)   Although the claims against it are stayed, BB&T also filed a response to all four motions. (ECF No. 136.)   As such, all four motions are fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if "there is no genuine issue as to any material fact."   "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."   *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   When construing such factual issues, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production."   *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).   Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial."   *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine

issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

## III. DISCUSSION

Cross-motions for summary judgment are reviewed separately if material facts are in dispute. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). Here, the Court does not find that material facts are in dispute. Thus, for brevity's sake, the parties' various arguments are woven together in a single discussion. The Court will begin with Plaintiffs' claims against LM Insurance.

### A. *LM Insurance*

As a preliminary matter, the Court must first determine whether West Virginia or Virginia law applies to Plaintiffs' claims against LM Insurance. As this case is before this Court on diversity jurisdiction, the Court must apply West Virginia choice of law principles. *See Soyoola v. Oceanus Ins. Co.*, No. 2:13-cv-08907, 2013 WL 3821455, at *1 (S.D. W. Va. 2013) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under West Virginia law, "the interpretation of insurance policy coverage, rather than liability, is treated as a contract question for purposes of conflicts analysis." *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 390 S.E.2d 562, 565 (W. Va. 1990). When analyzing a conflict of law question involving a contract, "[t]he law of the state in which a contract is made and to be performed governs [its] construction. . . ." *See Soyoola*, 2013 WL 3821455, at *1 (quoting *Triangle Indus.*, 390 S.E.2d at 565). "A contract is made at the time when the last act necessary for its formation is done, and at the place where the final act is done." *Carper v. Kanawha Banking & Trust Co.*, 207 S.E.2d 897, 901 (W. Va. 1974) (syl., pt. 8). This is generally where the policy is issued. *See Mulvey Const., Inc. v. Bituminous Cas. Corp.*,

571 F. App'x 150, 155 (4th Cir. May 7, 2014) ("Therefore, where a party has made an offer to the insurance company by applying for insurance, the insurance company's issuance of the policy constitutes its acceptance.").

The Supreme Court of Appeals of West Virginia has also considered whether "another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state." *See id.* This "more significant relationship" test, found in Restatement (Second) of Conflict of Laws § 6, provides the following factors for consideration in determining whether another forum has a more significant relationship:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

*See Triangle Indus.*, 390 S.E.2d at 567 (citing Restatement (Second) of Conflict of Laws § 6(2)(a)–(g)).

Here, the undisputed factual record shows that the original LM Insurance Policy and the renewal was negotiated by BB&T, a Virginia insurance broker, issued to KC Transport in Virginia, and was intended to cover Virginia operations and Virginia Workers' Compensation claims. (*See* ECF No. 130-4; 130-7; *see also* ECF No. 130-6 at 23.) Coverage for West Virginia was not added until seven months after the policy was renewed for a second year. (*See* ECF No. 130-7 at 37.) Additionally, there is no indication that either party would have reasonably expected, at the time the contract was entered into, that any litigation pertaining to the policy would be based upon West Virginia law. *See Triangle Indus.*, 390 S.E.2d at 567; *see, e.g.*, *Mulvey Const., Inc.*, 571 F. App'x

at 157 ("Although the . . . accident [was] in West Virginia, the centerpiece of this litigation is the interpretation of the insurance contract, which was formed in Virginia. Thus, the parties to the contract reasonably should have expected that Virginia law would apply."). Thus, as the contract was formed and to be performed in Virginia and West Virginia does not have a more significant interest in the present action, Virginia law should apply.

Further, the public policy exception does not preclude the application of Virginia law. The "public policy exception 'is necessarily a narrow one, to be invoked only in extraordinary circumstances.'" *Mulvey Const., Inc.*, 571 F. App'x at 157 (quoting *Yost v. Travelers Ins. Co.*, No. 98-cv-1790, 1999 WL 409670, at *6 (4th Cir. June 21, 1999)). "The mere fact that the substantive law of another jurisdiction differs from or is less favorable than the law of the forum state does not, by itself, demonstrate that application of the foreign law under recognized conflict of laws principles is contrary to the public policy of the forum state." *Nadler v. Liberty Mut. Fire Ins. Co.*, 424 S.E.2d 256, 258 (syl. pt. 3) (W. Va. 1992). Further, the West Virginia Supreme Court of Appeals has stated that the public policy exception is not met unless the law of the other state is "contrary to pure morals or abstract justice" or "enforcement would be of evil example and harmful to [West Virginia's] own people." *Nadler*, 424 S.E.2d at 265. Here, the most relevant difference between Virginia and West Virginia contract law is that Virginia law does not consider the reasonable expectations of the insured. However, Plaintiffs have not demonstrated that this difference warrants the application of the public policy exception. *See Mulvey Const., Inc.*, 571 F. App'x at 158. Accordingly, the Court **FINDS** that Virginia law applies here. *See Midland Meadows Senior Living, LLC v. First Mercury Ins. Co.*, No. 3:13-cv-26563, 2014 WL 1772562, at *3 (S.D. W. Va. May 2, 2014) (finding that Pennsylvania had a stronger interest where the

insurance contract was negotiated by a Pennsylvania insurance broker and delivered in Pennsylvania and the only connection to West Virginia was the underlying lawsuit).

### 1. Reasonable Expectation of Coverage

As stated above, Kinder, Cline, and Christian all filed workers' compensation claims, alleging that they were injured while working for KC Transport in West Virginia. *See supra* Part I.B. In their Amended Complaint, Plaintiffs allege that LM breached their insurance contract with Plaintiffs by denying coverage for the above claims against KC Transport. (*See* ECF No. 66 at 12.) Plaintiffs further seek declaratory judgment that the LM Insurance Policy covers these claims. (*See id.* at 10.)

In its motion, LM Insurance argues that the 2015 LM Insurance Policy did not provide coverage for West Virginia prior to December 3, 2015, when Plaintiffs paid the additional premium, and thus the above claims are not covered under the policy. (*See* ECF No. 131 at 11–19.) Plaintiffs, however, argue that the policy language is ambiguous regarding how to make changes to the policy and that the application for coverage, Coal Haul Agreement, and the audit should have been sufficient notice for LM Insurance to add West Virginia coverage to policy. (*See* ECF No. 129 at 15–18; ECF No. 138 at 19–25.)

Under Virginia law, "language in a contract is ambiguous 'when it may be understood in more than one way or when it refers to two or more things at the same time.'" *Pacific Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 405 (4th Cir. 1998) (quoting *Granite State Ins. Co. v. Bottoms*, 415 S.E.2d 131, 134 (Va. 1992)). If policy language is ambiguous, "it will be construed strictly against the insurer." *Lincoln Nat. Life Ins. Co. v. Commonwealth Corrugated Container Corp.*, 327 S.E.2d 98, 101 (Va. 1985).

Here, the 2015 LM Insurance Policy states that it provides workers' compensation coverage for claims brought under Virginia law. (*See* ECF No. 130-7 at 16.) The policy further provides that if Plaintiffs hire employees or begin operations outside of Virginia, Plaintiffs "should do whatever may be required" under the other state's law as the RMLOSIE endorsement "does not satisfy the requirements of that state's workers compensation law." (*See id.* at 30.)

Plaintiffs do not assert that the above policy language is ambiguous but instead argue that language found in the informational packet regarding how to make policy changes is ambiguous. However, the clear, undisputed language of the policy states that the policy only "includes at its effective date the Information Page and all endorsements and schedules listed there." (ECF No. 130-6 at 27.) Thus, this separate informational packet is not part of the policy and cannot be the basis for an argument that the insurance policy is ambiguous.

Plaintiffs further assert that, even if the Court finds that the policy is unambiguous, it can still consider extrinsic evidence, which, Plaintiffs argue, will show that Plaintiffs had a reasonable expectation of West Virginia coverage under the policy. (*See* ECF No. 138 at 18–19.) "Under the 'reasonable expectations' doctrine, 'a court examines the objectively reasonable expectations of the contracting parties to give meaning to ambiguous policy provisions.'" *Admiral Ins. Co. v. W.W. Assocs., Inc.*, No. 3:17-cv-00027, 2018 WL 3097335, at *4 (W.D. Va. June 21, 2018) (quoting *Norfolk & W. Ry. Co. v. Accident & Cas. Ins. Co.*, 796 F. Supp. 929, 933 (W.D. Va. 1992)). Virginia does not explicitly recognize this doctrine and, even if it did, the doctrine is only applicable if the policy is ambiguous. *See id.* (citing *Firemen's Ins. Co. v. Kline & Son Cement Repair, Inc.*, 474 F. Supp. 2d 779, 798 (E.D. Va. 2007)); *see also Nationwide Mut. Ins. Co. v. Overlook, LLC*, 785 F. Supp. 2d 502, 524 (E.D. Va. 2011) ("[T]he doctrine is used . . . to clarify an ambiguity, not create one."). As the Court has not found any ambiguity in the policy, the

reasonable expectations doctrine does not apply here.   *See Admiral Ins. Co.*, 2018 WL 3097335, at

\*4.   Thus, the Court will not consider extrinsic evidence in interpreting the policy.

Lastly, to the extent Plaintiffs argue that LM Insurance should have added West Virginia to

the policy based on Plaintiffs' insurance application, the audit, and tendering of the Coal Haul

Agreement, the Court does not find this argument persuasive.   The policy states that, should the

insured begin operations in a state other than Virginia, the insured should comply with that state's

workers' compensation law.   (*See* ECF No. 130-7 at 30.)   Thus, the policy places the

responsibility on the insured to determine if it needs coverage in the additional state and to attain

that coverage, not LM Insurance.

Accordingly, the Court **FINDS** that West Virginia was not added as a covered state under

the policy until December 2015.   As the Kinder, Cline, and Christian all filed claims for WCA

under West Virginia before West Virginia was added to the policy, the possible coverage for these

claims would be under the RMLOSIE.

### 2.   Coverage Under the RMLOSIE for Kinder, Cline, and Christian

Plaintiffs argue that the Kinder, Cline, and Christian claims are covered under the

RMLOSIE.   (*See* ECF No. 138 at 11–16.)   LM Insurance, however, argues that the claims do not

satisfy the three RMLOSIE requirements and thus are not covered.   (*See* ECF No. 131 at 5–9.)

As stated above, under the RMLOSIE, the policy provides that coverage is available for

claims brought outside of Virginia if the following factors exist:

> a.      The employee claiming benefits was either hired under a contract of
> employment made in a state listed in Item 3.A. of the information Page; and
> b.      The employee claiming benefits is not claiming benefits in a state where, at
> the time of injury, (i) you have other workers compensation insurance coverage, or
> (ii) you were, by virtue of the nature of your operations in that state, required by that
> state's law to have obtained separate workers compensation insurance coverage, or
> (iii) you are an authorized self-insurer or participant in a self-insured group plan; and

c.     The duration of the work being performed by the employee claiming benefits in the state for which that employee is claiming benefits is temporary.

(ECF No. 130-7 at 30.)   The Court will address each of these requirements separately.

### a.  Contract of Employment Requirement

As stated above, the first factor requires that the employee claiming benefits was hired under a contract of employment made in Virginia.   LM Insurance argues that no written employment contract exists for Kinder, Cline, and Christian, but that statements made by Plaintiffs show that they were hired West Virginia.   (*See* ECF No. 131 at 6–7.)   In support of its motion, LM Insurance offers the deposition testimonies of Lynn Compton, Kenny Compton, and deposition testimony of Kerryanne Holliss ("Holliss"), a Senior Claim's Manager for workers' compensation insurance for LM Insurance who was responsible for investigating these claims, and an email from the West Virginia Insurance Commissioner's Office to BB&T.

In his deposition testimony, Kenny Compton stated that Kinder was hired in West Virginia. (*See* ECF No. 139-22 at 5–6 (Kenny Compton Dep.).)   Lynn Compton stated in her deposition testimony that, although she believed Kinder was hired in Virginia, she had no reason to disagree with Kenny Compton.   (*See* ECF No. 139-23 at 3–4 (Lynn Compton Dep.).)   Kenny Compton's testimony is further supported by the deposition testimony of Holliss in which Holliss testified that Lynn Compton informed her that Kinder was a West Virginia employee and that, because she believed the 2015 LM Insurance Policy covered West Virginia, there was coverage for Kinder's claims under the policy.   (*See* ECF No. 130-20 at (Holliss Dep.).)   Holliss further testified that Lynn Compton reported to her during the investigation of all three claims that Cline and Christian were also West Virginia employees.   (*See* ECF No. 139-24 at 3 (Holliss Dep.).)   Further, the West Virginia Office of the Insurance Commissioner stated in an email regarding a complaint

BB&T filed against LM Insurance for LM Insurance's denial of coverage for the above claims that, while investigating BB&T's complaint, Kinder, Cline, and Christian all stated that they were hired in West Virginia. (*See* ECF No. 139-28 at 3 (Email from the West Virginia Office of the Insurance Commissioner to BB&T).).

Plaintiffs have not provided sufficient evidence to rebut LM Insurance's showing that Kinder, Cline, and Christian were hired in West Virginia nor have they provided sufficient evidence showing that the above employees were hired in Virginia in support of their own motion. Plaintiffs do not dispute that there are no written employment contracts for the above employees Plaintiffs instead summarily allude to the possible existence of an oral contract. (*See* ECF No. 138 at 13.) However, Plaintiffs do not provide any evidence or factual allegations demonstrating that any oral contract exists, nor is there support for its existence in the record. *See Barwick*, 736 F.2d at 958 ("Once a defendant makes the necessary showing, the plaintiff must go forward and produce evidentiary facts to support his contentions.").

The only evidence Plaintiffs offer in support of their motion is Lynn Compton's affidavit. However, Plaintiff's reliance on Lynn Compton's affidavit, (*see* ECF Nos. ECF No. 125 at 14; 138 at 14), is also insufficient to create a genuine issue of material fact as it contradicts her previous deposition testimony. *See Barwick*, 736 F.2d at 960 ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." (internal quotation marks omitted)).

14

Accordingly, LM Insurance has made a sufficient showing that Kinder, Cline, and Christian were not hired in Virginia. Further, pursuant to their motion, Plaintiffs have failed to submit sufficient evidence for a reasonable juror to determine that the above employees were hired in Virginia. As these claims do not satisfy this first factor, there is no coverage for these claims under the RMLOSIE. Further, even if Plaintiffs established that there is a genuine issue of material fact as whether Kinder, Cline, and Christian were hired in Virginia, Plaintiffs cannot show that they were not required to have workers' compensation insurance in West Virginia.

### b. Workers' Compensation Insurance Requirement

LM Insurance argues that it is undisputed that, at the time of Kinder's, Cline's, and Christian's injuries West Virginia law required KC Transport to have workers' compensation in West Virginia. (*See* ECF No. 131 at 7–8.) In support of its contention, LM Insurance directs the Court to West Virginia Code § 23-2-1(a) which states, in relevant part, the following:

> [A]ll persons, firms, associations and corporations regularly employing another person or persons for the purpose of carrying on any form of industry, service or business in this state, are employers within the meaning of this chapter and are required to subscribe to and pay premium taxes into the Workers' Compensation Fund for the protection of their employees and are subject to all requirements of this chapter and all rules prescribed by the Workers' Compensation Commission with reference to rate, classification and premium payment. . . .

(*See id.*)

Plaintiffs do not dispute that KC Transport was required to have West Virginia workers' compensation insurance, but instead argue that LM Insurance is estopped from asserting this defense as LM Insurance did not cite it as a basis to deny coverage. (*See* ECF No. 138 at 14–15.) However, under Virginia law, "the coverage of an insurance contract may not be extended by estoppel or implied waiver to include risks expressly excluded." *Norman v. Ins. Co. of N. Am.*, 239 S.E.2d 902, 908 (Va. 1978) (quoting *Sharp v. Richmond Life Ins. Co.*, 183 S.E.2d 132, 135 (Va.

15

1971)); *see also Mulvey Const., Inc. v. Bituminous Cas. Corp.*, 571 F. App'x 150, 158 (4th Cir. May 7, 2014) ("Virginia precedent reflects that estoppel may not be used to extend the coverage of an insurance contract.").

Further, in its denial letters, LM Insurance states that coverage is not available under the RMLOSIE provision, which necessarily includes the second factor of the RMLOSIE provision. (*See* ECF Nos. 130-9; 130-10; 130-13.) Thus, the present motion for summary judgment is not the first time in which LM Insurance asserted the second factor as a defense to providing coverage. Additionally, the denial letters also state that the letters should not be construed as a waiver or estoppel of any other possible coverage defenses provided by the policy or any applicable law, (*see id.*), which put Plaintiffs on notice that additional defenses may be asserted.

As the West Virginia Code provides that employers must have workers' compensation insurance for employees who regularly work in West Virginia and the Court finds below that Kinder, Cline, and Christian all regularly worked in West Virginia, Plaintiffs were required to have workers' compensation insurance in West Virginia. *See Stover v. Matthews Trucking, Inc.*, No. 2:11-cv-00180, 2011 WL 614099, at *3 (S.D. W. Va. Dec. 9, 2011) ("I find that Stover regularly worked in West Virginia, thereby requiring Matthews Trucking to subscribe to the Workers' Compensation Fund and subjecting Stover to the Act."). Thus, as Plaintiffs did not have the requisite workers' compensation coverage, the second RMLOSIE factor is not satisfied. However, even if the Court estopped LM Insurance from asserting the second factor as a defense, there would still not be coverage for the above claims under the RMLOSIE as Kinder, Cline, and Christian were not temporary workers.

### c. Temporary Work Requirement

The third RMLOSIE factor requires that, "the duration of the work being performed by the employee claiming benefits in the state for which that employee is claiming benefits is temporary." LM Insurance argues that, under West Virginia law, Kinder, Cline, and Christian were not temporary employees. (*See* ECF No. 131 at 9.) However, Plaintiffs assert that the work being performed by Kinder, Cline, and Christian could be terminated at any time and thus was temporary. (*See* ECF No. 138 at 15–16.)

The West Virginia Code of State Rules regarding workers' compensation defines temporary as, "period not exceeding thirty (30) calendar days within any three hundred and sixty-five (365) day period." W. Va. Code R. § 85-8-3.17; *see also Rosciti Const. Co., LLC v. Moran*, No. 14-cv-0398, 2015 WL 6839865, at *1–2 (W. Va. Nov. 4, 2015). Here, the Parties do not dispute that Kinder, Cline, and Christian worked exclusively in West Virginia for periods ranging from 7–18 months. (*See* ECF No. 131 at 9.) Thus, Kinder, Cline, and Christian were not temporary employees.[2]

The West Virginia Insurance Commissioner also reached this conclusion. (*See* ECF No. 139-28.) After investigating the BB&T complaint filed against LM Insurance, the West Virginia Office of the Insurance Commissioner concluded that Kinder, Cline, and Christian were not temporary employees under West Virginia law. (*See id.* at 3.) Accordingly, as Kinder, Cline, and Christian were not temporary employees, Plaintiffs cannot satisfy the third RMLOSIE requirement.

In sum, the RMLOSIE provision does not extend coverage to the Kinder, Cline, and Christian claims as these claims do not satisfy any of the three requirements for coverage under the

---

[2] The same outcome is reached under Virginia law. *See Mark Five Const. Co., Inc. v. Gonzalez*, 590 S.E.2d 81, 84 (Va. App. 2003) (noting that an employee worked regularly when he worked on a project in Virginia for eight months).

RMLOSIE.   As there is also no coverage for Kinder's claims under the 2015 LM Insurance policy,

LM Insurance did not have a duty to defend or indemnify Plaintiffs in Kinder's lawsuit.

### 3.   Coverage for Steele

LM Insurance further argues that there is no coverage under the 2015 LM Insurance Policy

for Steele's workers' compensation claim or lawsuit because Steele was not injured in the course of

his employment, as found by the West Virginia Supreme Court of Appeals in Steele's lawsuit, and

because the policy excludes coverage for claims of employment discrimination.   (*See* ECF No. 131

at 9–11.)

Plaintiffs do not dispute whether Steele was injured while in the course of his employment,[3]

but instead assert that LM Insurance had a duty to defend Plaintiffs against Steele's lawsuit because

West Virginia law requires insurers to defend all claims even if only part of the claims come within

the duty to defend.   (*See* ECF No. 138 at 16–19.)   Plaintiffs argue that, because Steele's lawsuit

also alleged claims for negligence with respect to Steele's employee rights, LM Insurance had a

duty to defend Plaintiffs against all of the claims in the lawsuit.   (*See id.*)

The 2015 LM Insurance Policy provides that it will provide coverage for liability claims for

bodily injury against KC Transport.   (*See* ECF No. 130-7 at 21–22.)   The policy further provides

that it does not cover "[d]amages arising out of coercion, criticism, demotion, evaluation,

reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination

of any employee. . . ."   (*See id.* at 22.)

In his lawsuit, Steele alleges claims against KC Transport for discrimination, unlawful

termination, retaliation, and negligence.   (*See* ECF No. 130-16 at 4–8.)   A plain reading of the

---

[3] Plaintiffs argue in their motion for summary judgment as to LM Insurance that there was coverage under the RMLOSIE for Steele's claims.   However, because Steele's injury occurred after West Virginia was added to the policy, the RMLOSIE does not apply.   Further, LM Insurance did not deny coverage for Steele's claims based on the RMLOSIE.   (*See* ECF No. 131 at 4.)

complaint shows that the negligence claim relates to KC Transport's wrongful termination of Steele. The negligence count states that KC Transport was negligent in providing a working environment that complied with state and local law so that Steele's employee rights were not violated. (*See id.* at 9, ¶ 62.) If Steele intended this count to relate to his bodily injury he could have alleged so specifically as he did in his claims against Blackhawk Mining. (*See id.* at 10, ¶¶ 66–67.) As none of Steele's claims against KC Transport are for bodily injury, Steele's workers' compensation claim is not covered under the 2015 LM Insurance Policy.

In sum, LM Insurance has met its burden of showing that the 2015 LM Insurance policy did not provide coverage for the Kinder, Cline, Christian, and Steele claims and lawsuits. Thus, LM Insurance did not breach the insurance contract by failing to cover these claims. As the Court has found that LM Insurance did not breach the insurance contract by denying these claims, Plaintiffs are not entitled to declaratory judgment. Accordingly, LM Insurance is entitled to summary judgment on the declaratory judgment and breach of contract claims against it.

B. *Selective*

As stated above, Plaintiffs submitted the Kinder and Steele lawsuits to Selective for defense and/or indemnification but Selective denied coverage. *See supra* Part I.B. In its motion for summary judgment, Selective argues that the Selective Insurance Policy does not provide coverage for Kinder's and Steele's claims as they are for work-place injuries and employment discrimination and retaliation, coverage for which is expressly excluded under the policy. (*See* ECF No. 129 at 6–7.) Plaintiffs, however, argue that Kinder's and Steele's complaints are susceptible of an interpretation under which the claims are covered by the Selective Insurance Policy. (*See* ECF No. 137 at 9.)

As a preliminary matter, the Parties disagree about whether Virginia or West Virginia law applies to this action. The Court discussed the standard for addressing choice of law issues regarding contracts at length above. *See supra* Part III.A. Here, the Selective Insurance Policy was acquired through BB&T, a Virginia broker, and issued to KC Transport in Virginia. (*See* ECF No. 128-1 at 28.) Additionally, the policy states that the property insured under the policy is located in Bluefield, Virginia. (*See id.* at 117.) Further, there are thirteen Virginia-specific endorsements and notices to the policy under both the General Liability Coverage and Umbrella Liability Coverage. (*See* ECF No. 128-1.)

In contrast, the policy does not contain any West Virginia-specific endorsements, nor is West Virginia mentioned at all in the policy. The only connection that West Virginia has to this action are the underlying claims against Plaintiffs. While courts have not ruled out that underlying claims can be enough for a state to have a significant interest in an action, these courts ultimately applied the law of the state where the insurance policy was issued and/or where the covered property or actives were located. *See, e.g.*, *Mulvey Const., Inc.*, 571 F. App'x at 156–57 (applying the law of the state where the contract was formed and stating that "[a]lthough the tragic accident in this case occurred in West Virginia and killed a citizen of that state, the West Virginia Supreme Court has downplayed the importance of injury location compared to the place of contract formation."); *Midland Meadows*, 2014 WL 1772562, at *3 (finding that Pennsylvania had a stronger interest where the insurance contract was negotiated by a Pennsylvania insurance broker and delivered in Pennsylvania and the only connection to West Virginia was the underlying lawsuit); *Soyoola*, 2013 WL 3821455, at *3 (declining to apply the law of state where the contract was issued and instead applying the law of the state where the intended covered activity was). As here the policy was formed and to be performed in Virginia, Virginia law should apply.

Furthermore, to the extent that Plaintiffs argue that Virginia law is contrary to public policy because it does not consider the reasonable expectations of the insured, the Court does not find that argument persuasive. *See supra* Part III.A. Accordingly, the Court **FINDS** that Virginia law applies to this action.

In their Amended Complaint, Plaintiffs allege that Selective breached its insurance contract with Plaintiffs by denying coverage for the Kinder and Steele lawsuits and the Hamden Coal and Blackhawk Mining claims against KC Transport. (*See* ECF No. 66 at 19–20.) Plaintiffs further seek declaratory judgment that these claims are covered under the Selective Insurance Policy. (*See id.* at 18–19.) Selective argues that the Selective Insurance Policy does not cover any of the above claims. The Court will address each set of claims separately. (*See* ECF No. 129.)

## 1. Coverage for the Kinder and Steele Claims

In its motion, Selective argues that the Selective Insurance Policy does not provide coverage for Kinder's and Steele's claims, either under the General Liability Coverage or the Umbrella Liability Coverage, as the claims are not for "bodily injury" or "personal and advertising injury." (*See* ECF No. 129 at 8.) KC Transport further argues that coverage for these claims is excluded by the Employment Practices, Employer's Liability, and Auto Exclusions. (*See id.*)

Plaintiffs, however, argue that Kinder and Steele both state in their complaint that they are seeking compensation from KC Transport, Hampden Coal, and Blackhawk Mining for personal injuries and thus are claims for "bodily injury." (*See* ECF No. 137 at 11.) Plaintiffs further argue that Selective is barred from arguing that Kinder's claims are excluded under the Employer's Liability and Auto Exclusions because Selective did not cite these as reasons for denying coverage in its denial letters. (*See id.*)

### a. General Liability Coverage

The Selective Insurance Policy's General Liability Coverage provides, in relevant part, that Selective "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" caused by an occurrence "to which this insurance applies" and "defend the insured against any 'suit' seeking those damages." (ECF No. 128-1 at 122.) The policy further defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time," (*id.* at 134), and "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," (*id.* at 136.)

The General Liability Coverage has several coverage exclusions. The Employee Exclusion excludes the following:

> "Bodily injury" to:
> (1) An "employee" of the insured arising out of and in the course of:
> (a) Employment by the insured; or
> (b) Performing duties related to the conduct of the insured's business;
> . . .
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

(*See id.* at 123.) Additionally, the Auto Exclusion excludes the following:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, ·auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the ·occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, auto· or watercraft that is owned or operated by or rented or loaned to any insured.

(*Id.* at 125.)    Lastly, Employment-Related Practices Exclusion states that there is no coverage for

bodily injury or personal and advertising injury arising out of the following:

> (a) Refusal to employ that person;
> (b) Termination of that person's employment; or
> (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person;

(*See id.* at 142.)    This exclusion further provides that it applies in the following:

> (1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;
> (2) Whether the insured may be liable as an employer or in any other capacity; and
> (3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(*See id.*)

In his complaint, Kinder alleges that he was injured during the course of his employment

with KC Transport when he slipped and fell from his coal truck.    (*See* ECF No. 128-3 at 3, ¶ 11

(Kinder Compl.).)    Kinder further alleges that KC Transport terminated his employment the day

after his injury and he did not receive his wages.    (*See id.* at 3–4, ¶¶ 14, 19–20.)    Kinder alleged

the following causes of action against Plaintiffs:    employment discrimination against an employee

who filed a workers' compensation claim (Count I); employment discrimination for terminating an

employee who is absent due to a compensable injury (Count II); employment discrimination for

terminating an employee because of a workplace injury disability (Count III); employment

discrimination for unlawful retaliation (Count IV); wrongful termination (Count V); intentional

infliction of emotional distress (Count VI); violation of the West Virginia Wage Payment and

Collection Act (Count VII); and negligence for not providing a safe work environment (Count

VIII).    (*See id.* at 4–11.)

Counts I through VII are for termination, discrimination, or retaliation and thus relate to alleged discrimination by KC Transport that occurred following the injury. Thus, they fall under the Employment-Related Practices Exclusion. (*See id.* at 142.) The only claim that could possibly fall under the definition of "bodily injury" is the negligence claim as it alleges that Plaintiffs failed to exercise reasonable care with regards to its property and that this failure resulted in damages to Kinder. However, even if the Court found that this claim was a claim for bodily injury, it is excluded under the Employer's Liability and Auto Exclusions as Kinder was an employee of the insured who is claiming an injury sustained while in the course of his employment and this alleged injury arose from the use of a truck owned by KC Transport. (*See* ECF No. 128-3 at 3, ¶ 11.)

Steele's complaint contains similar claims. Steele alleges that he was injured when he a coal truck he was driving collided with a parked truck operated by a Blackhawk Mining employee. (*See* ECF No. 128-4 at 3, ¶ 12.) Steele further alleges that after reporting his injury to Eddie Compton, he was not placed back on the work scheduled and was subsequently terminated. (*See id.* ¶¶ 13–17.) Steele asserts the following causes of action against Plaintiffs: employment discrimination against an employee who filed a workers' compensation claim (Count I); employment discrimination for terminating an employee who is absent due to a compensable injury (Count II); employment discrimination for terminating an employee because of a workplace injury disability (Count III); employment discrimination for unlawful retaliation (Count IV); wrongful termination (Count V); intentional infliction of emotional distress (Count VI); and negligence for not providing a safe work environment (Count VII). (*See id.* at 4–9.) As Steele's claims are also employment related, they are excluded by the Employment-Practices Exclusion. Further, as Steele

was an employee claiming an injury involving a truck that he sustained while in the course of his employment with KC Transport, the Employer's Liability and Auto Exclusions also apply.

Plaintiffs assert that Selective is estopped from asserting the Employer's Liability and Auto Exclusions as defenses to coverage because it did not include them in its denial of coverage letters. (*See* ECF No. 137 at 12–13.) However, as stated above, under Virginia law, "the coverage of an insurance contract may not be extended by estoppel or implied waiver to include risks expressly excluded." *Norman*, 239 S.E.2d at 908. "The only exception 'is where an insurer unconditionally defends an action brought against its insured' and thereby waives the right to exclude coverage under the policy. *KitBar Enters.*, 291 F. Supp. 3d at 767–68 (quoting *Norman*, 239 S.E.2d at 902.) Further, an insurer can reserve its right to deny coverage through an effective communication with the insured that fairly informs the insurer of the its position. *See id.* (citing *Norman*, 239 S.E.2d at 908).

Here, Selective referenced the Employment-Related Practices Exclusion in its denial letters regarding Kinder's and Steele's claims. (*See* ECF No. 137-3 at 6–8; ECF No. 126-8 at 3–7.) The letters also stated that Selective was reserving the right to modify its position based on new information and that "[a]ll rights, whether mentioned in the letter or not, are hereby expressly reserved and no acts or failure to act by Selective are intended, nor shall they be construed as, a wavier of any of Selective's rights." (ECF No. 137-3 at 7–8; ECF No. 126-8 at 6–7.) Thus, Selective clearly demonstrated that it was not waiving its right to deny coverage based on other policy exclusions. As such, Plaintiffs were on notice that Selective could assert other exclusions as defenses to Kinder's and Steele's claim. Accordingly, the Court does not find Plaintiffs' waiver argument persuasive and Selective is free to assert the additional policy provisions as a bar to coverage for Kinder's and Steele's claims.

As the plain language of the General Liability Coverage excludes Kinder's and Steele's claims, Selective did not have a duty to provide coverage or defend Selective with respect to these claims under that provision.

### b. Umbrella Liability Coverage

Plaintiffs further assert that there is coverage for the Kinder and Steele claims under the Umbrella Liability Coverage. (*See* ECF No. 137 at 16–19.) Specifically, Plaintiffs argue that the Umbrella Liability Coverage covers "personal and advertising injuries" which includes disability discrimination. (*See id.* at 17.) Thus, Plaintiffs argue, as Kinder's claims against it are for disability discrimination, they are covered under the Umbrella Liability Coverage. (*See id.*)

The Umbrella Liability Coverage provides, in relevant part, the following:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted.

(ECF No. 128-1 at 150.) The provision further defines "personal and advertising injury," in part, as "discrimination because of race, religion, age, sex or physical disability" as long as it is not "committed by or at the direction of the insured." (*Id.* at 164.)

The Umbrella Liability Coverage excludes coverage for 'property damage' or 'personal and advertising injury' to which this insurance does not apply." (*See id.* at 150.) Additionally, the Umbrella Liability Coverage includes the Employment-Practices Exclusion as iterated above. (*See id.* at 152.) It further excludes coverage for "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" (*Id.* at 153.)

Here, the Court has already concluded that the Kinder and Steele claims fall under the Employment-Practices Exclusion as they are claims for discrimination by KC Transport and Eddie Compton. *See supra* Part III.B.1.a. As the Umbrella Liability Coverage also includes this exclusion, the Selective Insurance Policy also does not provide coverage for the Kinder and Steele claims under the Umbrella Liability Coverage.

Plaintiffs assert that this reading of the insurance policy would mean that the policy provides no coverage for discrimination claims despite including them under the definition of "personal and advertising injury." (*See* ECF No. at 127 at 18.) Thus, Plaintiffs argue, the policy is ambiguous. However, barring the application of other exclusions, the Court can imagine the policy covering discrimination suits that are not employment related. As the plain language of the Umbrella Liability Coverage excludes Kinder's and Steele's claims, Selective did not have a duty to provide coverage or defend Selective with respect to these claims.

2. Coverage for the Hampden Coal and Blackhawk Mining Claims

As stated above, in its crossclaim against KC Transport in the Kinder action, Hampden Coal alleged that KC Transport had a duty to it to defend and indemnify. *See supra* Part I.B. Plaintiffs tendered Hampden Coal's crossclaim to Selective for coverage, which Selective subsequently denied citing the Employment-Practices Exclusion and stating the following:

> Furthermore, there is no obligation to accept or consider any tender based on the language in the above cited endorsement concerning contractual liability. The language in the primary policy is replaced by the language in the endorsement which deletes the provision establishing that indemnification agreements are an "insured contract."
>
> Hampden Coal, LLC is not an additional insured under the KC Transport, Inc., policy.

(ECF No. 126-6 at 7.)   Plaintiffs also tendered Steele's complaint against KC Transport, Hampden Coal, and Blackhawk Mining for defense and/or indemnification, but Selective denied those claims, also finding that Hampden and Blackhawk are not covered under the Selective Insurance Policy. *See supra* Part I.B.   (*See also* ECF No. 137-5 at 3 (Steele/Blackhawk Mining Denial Letter).)

Plaintiffs argue that the Hampden Coal and Blackhawk Mining indemnity claims are covered under the General Liability Coverage and that Hampden and Blackhawk Mining are additional insureds under the policy pursuant to the reasonable expectations doctrine.   (*See* ECF No. 137 at 13–16.)   Selective, however, argues that the Hampden Coal and Blackhawk Mining indemnity claims are excluded under the Contract Liability Exclusion.   (*See* ECF No. 129 at 12.) Selective further argues that Hampden Coal and Blackhawk Mining are not addition insureds under the policy and the reasonable expectations doctrine does not apply.   (*See id.* at 12–16.)

The Selective Insurance Policy's Contractual Liability Exclusion provides the following, in relevant part:

> This insurance does not apply to:
> . . .
> b. Contractual Liability
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.   This exclusion does not apply to liability for damages:
> (1) That the insured would have in the absence of the contract or agreement; or
> (2) Assumed in a contract or agreement that is an "insured contract" . . . .

(ECF No. 128-1 at 123.)   The Contractual Liability Limitation Endorsement defines "insured contract" as "contract for a lease of premises, . . . a sidetrack agreement, any easement or license agreement, . . . an obligation, as required by ordinance, to indemnify a municipality, [and] . . . an elevator maintenance agreement."   (*See id.* at 141.)

28

Here, Selective argues that the Coal Haul Agreement is not an "insured contract" under the policy terms.   (*See* ECF No. 129 at 13.)   Plaintiffs do not dispute this but instead assert that they could become liable to Hampden Coal and Blackhawk Mining for contribution by law because of the negligence claims and, thus, they would be liable for damages despite a contract or agreement. (*See* ECF No. 137 at 13.)   Therefore, Plaintiffs argue, the first exception to the Contractual Liability Exclusion applies and, thus, coverage for Hampden Coal and Blackhawk Mining is not excluded under the policy.   (*See id.*)

However, even if the Court agreed with Plaintiffs that the Contractual Liability Exclusion does not apply because their duty to contribute or indemnify arises out of law rather than contract, the Employer's Liability and Auto Exclusions would still bar coverage for Hampden Coal and Blackhawk Mining.   The Employer's Liability Exclusion explicitly states that it applies to "any obligation to share damages with or repay someone else who must pay damages because of the injury."   (*See* ECF No. 128-1 at 123.)   As discussed above, the Kinder and Steele claims are excluded by the Employer's Liability Exclusion, which applies to claims for indemnification and contribution.

Lastly, Plaintiffs argue that Hampden Coal and Blackhawk Mining were "additional insureds" under the Selective Insurance Policy based on the reasonable expectations doctrine.   The Court has already stated that Virginia has not adopted the reasonable expectations doctrine and that, the doctrine is only applicable when a court finds that the underlying contract is ambiguous.   *See supra* Part III.A.1.   Plaintiffs argue that the policy is ambiguous as to who is insured because of the changing of the definition of "insured contract" in the Contractual Liability Limitation Endorsement.   (*See* ECF No. 137 at 14–15.)   However, this section pertains to what claims are covered by the contract and not to who is covered under the contract.   The contract explicitly lists

who is insured under the contract and Hampden Coal and Blackhawk Mining are not included. (*See* ECF No. 128-1 at 130–131 (listing who is insured under the policy).)

To the extent that Plaintiffs are arguing that the above endorsement creates an ambiguity as to the meaning of "insured contract" and thus what claims are covered under the Contractual Liability provision, the Court does not find that argument persuasive. The Contractual Liability Limitation Endorsement removed the following from the definition of "insured contract":

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Thus, this new definition removes coverage for contracts or agreements in which the insured agreed to assume the contribution or indemnification duties of another party as it refers to this other party's tort liability and not the insureds. This does not conflict with the exception to the exclusion which relates to the insured's duty to contribute or indemnify. Thus, this new definition does not create an ambiguity in the insurance policy such that application of the doctrine of reasonable expectations is warranted. *See Overlook, LLC*, 785 F. Supp. 2d at 524. Furthermore, the Court has already found that even if the claims by contribution and indemnification fell under the Contractual Liability Endorsement, they are excluded by the Employer's Liability Exclusion.

In sum, there is no coverage under the Selective Insurance Policy for the Kinder and Steele claims. Additionally, the Hampden Coal and Blackhawk Mining claims are not covered under the Selective Insurance Policy. As Selective properly denied coverage for those claims, it did not breach its contract with Plaintiffs. Accordingly, Selective is entitled to summary judgment on Plaintiffs' declaratory judgment and breach of contract claims against it.

*IV.    CONCLUSION*

For the reasons discussed above, the Court **GRANTS** LM Insurance's and Selective's motions for summary judgment, (ECF Nos. 128, 130), and **DENIES** Plaintiffs' motions for summary judgment, (ECF Nos. 124, 126).   The Court further **LIFTS** the stay on Plaintiffs' claims against BB&T and Plaintiffs' extracontractual claims against LM Insurance and Selective Insurance.

A telephonic status conference will be held in this case on **August 14, 2019, at 3:00 p.m.** The call-in information for the call is as follows:   703-724-3100, then dial 4002661# to be placed on hold pending the start of the call.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        August 6, 2019

_____

THOMAS E. JOHNSTON, CHIEF JUDGE