# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

KC TRANSPORT, INC., et al.,

        Plaintiffs,

v.                                CIVIL ACTION NO. 2:18-cv-00005

LM INSURANCE CORPORATION, et al.,

        Defendants.

# ORDER

This action arises out of a series of alleged workplace injuries suffered by four employees of Plaintiff KC Transport, Inc. ("KC Transport") in 2015 and 2016. (ECF No. 66 at 6–10.) KC Transport alleges that in December 2014, it provided a coal haulage agreement to Defendant BB&T Insurance Services, Inc. ("BB&T") and entrusted BB&T to obtain the insurance coverage, including workers' compensation coverage, that it needed for its operations. (*Id.* at 3–4.) However, according to KC Transport, BB&T failed to do so. (*Id.* at 4.)

On January 23, 2020, BB&T noticed its intent to depose KC Transport pursuant to Federal Rule of Civil Procedure 30(b)(6). (ECF No. 171.) Before this Court is KC Transport's motion for protective order seeking to limit the scope of the deposition with respect to six topics. (ECF No. 172.) For the reasons explained more fully herein, the motion (ECF No. 172) is **GRANTED IN PART** and **DENIED IN PART**.

    A. Topic No. 1

As relevant here, this topic seeks testimony related to KC Transport's capital structure and finances. (ECF No. 171 at 1.) Based on BB&T's representation that it

seeks this information in order "to determine KC Transport's ability to pay for workers' compensation insurance during the time periods in issue," KC Transport argues that information about its capital structure is part of "a fishing expedition in an effort to allege that KC Transport did not have the ability to pay for such insurance if it was procured." (ECF No. 173 at 2–3.) KC Transport contends that this assertion is "pure speculation and conjecture" and that "there is not a tangible cost associated with the insurance BB&T failed to procure." (*Id.* at 3.)

BB&T responds, "It is clearly relevant to BB&T's defenses to know how much money KC Transport was making while it was simultaneously failing to cover its workers for workplace accidents." (ECF No. 176 at 5.) BB&T asserts that "[w]orkers' compensation insurance for start-up coal haul operations is difficult to obtain and expensive," and "KC Transport's ability and desire to purchase West Virginia workers' compensation insurance is at the heart of this matter." (*Id.*) According to BB&T, "KC Transport never expressly advised BB&T of its West Virginia payroll, and never asked BB&T to secure West Virginia coverage for KC Transport's West Virginia employees." (*Id.* at 2.)

KC Transport replies, "BB&T's efforts to inquire into whether KC Transport had the ability to pay for insurance that it wholly failed to procure is an improper effort to burden and blame shift based upon affirmative defenses never asserted by BB&T." (ECF No. 177 at 1.)

Whether KC Transport had sufficient profits to afford West Virginia workers' compensation insurance sweeps beyond the claims and defenses in this action. As KC Transport points out, BB&T's answer to the amended complaint never asserts that KC Transport was unable to afford the coverage. (*See* ECF No. 68.) Moreover, KC

Transport obtained workers' compensation insurance in Virginia in 2014 and eventually added West Virginia coverage after the injured employees filed workers' compensation claims that were denied by KC Transport's insurer (*see* ECF No. 155 at 2–3), making it unlikely that KC Transport did not have the requisite workers' compensation insurance simply due to its cost. Notably, BB&T offers no factual basis to support its assertion that KC Transport's finances played a role in the lack of West Virginia workers' compensation coverage. (*See* ECF No. 176 at 4–5.) Accordingly, KC Transport's motion for protective order is **GRANTED** as to Topic No. 1 as it relates to KC Transport's capital structure and finances.

 *B. Topic No. 3*

  This topic seeks testimony about KC Transport's "[m]otor vehicle inventory . . . from 2013 and [sic] 2016 and licensing, registration and insurance related to same." (ECF No. 171 at 1.) KC Transport argues that its responsibility to procure other types of insurance is not relevant because "only workers' compensation coverage is in issue" in this action and because "KC Transport is not a sophisticated insured." (ECF No. 173 at 3.)

  BB&T responds that the information is relevant to its understanding of KC Transport's "operations . . . during the relevant period." (ECF No. 176 at 5.) BB&T further argues that because KC Transport "will argue that it was 'unsophisticated,' and therefore could not have known that it needed to provide its West Virginia employees with West Virginia workers' compensation insurance," the requested information "will show just how 'unsophisticated' KC Transport actually was about its obligations to comply with state and federal law." (*Id.* at 5–6.)

3

KC Transport replies, "after taking the position that it had procured West Virginia workers' compensation insurance for KC Transport, and after an order from this Court determining no such coverage existed . . . BB&T must now make efforts to assert that KC Transport somehow never asked for such coverage." (ECF No. 177 at 2.) KC Transport asserts that BB&T had an obligation to procure the necessary coverage for KC Transport after KC Transport provided BB&T information about its operations, and that BB&T's corporate representative testified to that. (*Id.*)

Information related to KC Transport's motor vehicle fleet has no bearing on BB&T's contention that KC Transport did not request West Virginia workers' compensation insurance. KC Transport's knowledge—or lack thereof—of the requirements associated with licensing and insuring motor vehicles does not inherently indicate that it had the same level of understanding of its workers' compensation coverage obligations. Nor is it probative of KC Transport's efforts to procure workers' compensation insurance. As such, KC Transport's motion for protective order is **GRANTED** as to Topic No. 3.

C. *Topic No. 6*

This topic seeks information about "KC Transport's employment practices, including compensation and benefits, and/or the use of any independent contractors to perform essential company functions." (ECF No. 171 at 2.) KC Transport argues that this topic "is nothing more than a fishing expedition wherein BB&T seeks some anomalous violation of law or poor treatment of workers upon which BB&T can hang its hat to assert that KC Transport would not have obtained workers' compensation insurance based upon a pattern of behavior." (ECF No. 173 at 4.)

4

BB&T responds, "employment issues are directly related to workers' compensation needs." (ECF No. 176 at 6.) BB&T further asserts, "the reason that KC Transport failed to ever apply for West Virginia workers' compensation insurance, to ask BB&T to add West Virginia to its Virginia policy, and otherwise 'would not have obtained workers' compensation insurance' is patently relevant." (*Id*.)

KC Transport's reasons for not obtaining workers' compensation insurance for its West Virginia employees—assuming that KC Transport made a conscious decision to do so, as BB&T contends—would of course bear on BB&T's defense to KC Transport's claims. However, inquiry into the benefits KC Transport provided to its employees or its use of independent contractors is unlikely to yield that information. BB&T offers no other explanation for how "employment issues" generally relate to its defenses in this action. (*See id*.) Therefore, KC Transport's motion for protective order is **GRANTED** as to Topic No. 6.

*D. Topic No. 8*

This topic seeks information about KC Transport's "business decisions regarding the procurement of insurance policies . . . including any issues or difficulties related to obtaining coverage . . . for any and all lines of insurance." (ECF No. 171 at 2.) KC Transport argues that other types of insurance are not relevant because this case is about workers' compensation insurance." (ECF No. 173 at 4.) It further argues that "difficulties related to obtaining coverage should have been addressed by BB&T at the time [it was] entrusted with procuring insurance. (*Id*.) KC Transport also points out that "until the summary judgment ruling by this Court, BB&T took the position that it had, in fact, procured [workers' compensation] coverage for KC Transport, and that such coverage was available to KC Transport." (*Id*.)

5

BB&T responds that KC Transport's argument that this topic is irrelevant "simply defies common sense." (ECF No. 176 at 7.)

KC Transport replies, "In light of BB&T's admissions that [workers' compensation] insurance was available to KC Transport during the time in issue, any alleged difficulties in obtaining such insurance are mooted and not relevant for the purposes of discovery. Any other lines of insurance have no bearing on the present posture of this case." (ECF No. 177 at 3.)

KC Transport's general discussions about obtaining insurance of all types to cover its operations and its related business strategies bear on the issues in this action. For instance, BB&T is entitled to inquire about KC Transport's decision to engage BB&T to obtain insurance, its understanding of the services BB&T was expected to provide, and its knowledge about the coverage BB&T obtained on its behalf. Such information, which goes directly to the allegations in the amended complaint, is within the scope of this topic. Accordingly, KC Transport's motion for protective order is **DENIED** with respect to Topic No. 8.

*E. Topic No. 11*

This topic requests information about "workplace accidents that happened . . . between 2013 and the filing of the Amended Complaint" and involved KC Transport employees, including the four employees that are identified in the amended complaint. (ECF No. 171 at 2.) KC Transport represents that it does not object to the request "to the extent that it applies specifically to the four claimants whose workers' compensation injuries underlie the present case." (ECF No. 173 at 5.) KC Transport also seeks to limit the inquiry "to compensable injuries and the applicable time period of 2013–2016." (*Id.*)

6

It argues that "[n]o other injury would have been subject to the workers' compensation coverage that BB&T failed to procure." (*Id.*)

BB&T responds that KC Transport provides only a conclusory argument as to why non-compensable injuries or those that occurred after 2016 are not relevant. (ECF No. 176 at 7.)

KC Transport replies, "[BB&T] seeks to learn about all workplace accidents at KC Transport for a time period broader than the scope of the present matter, and regardless of whether the workers' compensation coverage in issue would have extended to those accidents. There is simply no basis to inquire regarding accidents that the coverage in issue would not have extended to even if it were properly procured." (ECF No. 177 at 3.)

KC Transport's request to limit the topic to workplace injuries that occurred between 2013 and 2016—the time period during which Defendant LM Insurance Corporation was KC Transport's insurance carrier (*see* ECF No. 176 at 7)—is reasonable. BB&T has not explained why information about accidents that occurred between 2016 and the filing of the amended complaint in this action on July 30, 2018—when KC Transport presumably had a different insurance carrier—bear on its defenses. (*See id.*) However, limiting the inquiry only to "compensable injuries" effectively allows KC Transport to unilaterally determine which workplace accidents during that period would have been covered by workers' compensation insurance that this Court has already determined it did not have. As such, KC Transport's motion for protective order is **GRANTED IN PART** and **DENIED IN PART** as to Topic No. 11, insofar as BB&T may inquire about any workplace accident that occurred between 2013 and 2016, whether "compensable" or not.

F. *Topic No. 12*

This topic requests information about insurance audits of KC Transport's operations "between 2013 and the filing of the Amended Complaint." (ECF No. 171 at 3.) KC Transport seeks to limit this inquiry to workers' compensation insurance audits between 2013 and 2016. (ECF No. 173 at 5.)

BB&T responds that the requested information will "show what KC Transport knew about its own business, insurance audits, and insurance in general during the relevant timeframe." (ECF No. 176 at 8.) BB&T argues that KC Transport's workers' compensation carrier audited KC Transport in June 2015, and KC Transport answered other discovery requests by stating that no other audits were performed afterward. (*Id.* at 7.) BB&T takes this to mean that audits were conducted prior to that period. (*Id.* at 7–8.)

KC Transport replies, "There is simply no basis to inquire regarding audits for other lines of coverage or other policy years" beyond the limitations it suggests. (ECF No. 177 at 3.)

As with Topic No. 11, KC Transport's request to limit this topic to audits occurring between 2013 and 2016 is reasonable because Defendant LM Insurance Corporation was KC Transport's insurance carrier during that time period. However, in addition to the workers' compensation coverage that forms the basis of this action, BB&T also procured general commercial liability and commercial umbrella insurance on KC Transport's behalf. (ECF No. 155 at 3.) The topic thus should not be limited to workers' compensation insurance. Accordingly, KC Transport's motion for protective order is **GRANTED IN PART** and **DENIED IN PART** as to Topic No. 12, insofar as BB&T may

inquire about insurance audits between 2013 and 2016 across all types of coverage that it was involved in securing for KC Transport.

In conclusion, KC Transport's motion for protective order (ECF No. 172) is **GRANTED** as to Topics Nos. 1, 3, and 6; **DENIED** as to Topic No. 8; and **GRANTED IN PART** and **DENIED IN PART** as to Topics Nos. 11 and 12, as set forth herein.

**IT IS SO ORDERED**.

The Clerk is **DIRECTED** to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: February 20, 2020

Dwane L. Tinsley
United States Magistrate Judge