IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KC TRANSPORT, INC., et al.,

          Plaintiffs,

v.                                CIVIL ACTION NO.  2:18-cv-00005

LM INSURANCE CORPORATION, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant BB&T Insurance Service, Inc.'s Motion for Summary Judgment, (ECF No. 183), and Plaintiffs KC Transport, Inc. d/b/a KC Transport of West Virginia, Inc. and Lynn Compton (collectively "Plaintiffs") Motion for Summary Judgment, (ECF No. 185). For the reasons discussed more fully below, the Court **GRANTS** Defendant's Motion and **DENIES** Plaintiffs' Motion.

*I.  BACKGROUND*

This case arises out of a coverage dispute between KC Transport, Inc. ("KC Transport"), its President, Lynn Compton ("Compton"), and one of its foremen, Eddie Compton, and their insurance providers, LM Insurance Corporation ("LM Insurance") and Selective Insurance Company ("Selective"), and their insurance broker, Defendant BB&T Insurance Services, Inc. ("BB&T"). (*See* ECF No. 66.) KC Transport purchased insurance policies through BB&T which included a Workers' Compensation and Employers' Liability Policy issued by LM

1

Insurance (hereafter the "LM Insurance Policy") and a Commercial General Liability Policy issued by Selective (hereafter the "Selective Insurance Policy"). (*See id.* at 2–3, 5 ¶¶ 9–17, 32.) Previously, this Court granted summary judgment in favor of LM Insurance and Selective, and those parties were subsequently dismissed from this action. (ECF Nos. 155, 159.) Further, Plaintiff Eddie Compton was voluntarily dismissed from this action. (ECF Nos. 166, 167.) Only the claims between Plaintiffs KC Transport and Lynn Compton and Defendant BB&T remain.

  A. *Procurement of the Insurance Policies*

In the spring of 2014, KC Transport was headquartered in the state of Virginia. (ECF No. 183–1 at 7.) In March of 2014, KC Transport began searching for coal hauling contracts but needed to show potential business partners that it was in compliance with the law and was providing workers' compensation coverage for its driver employees. (*Id.*) To obtain this coverage, Compton approached Edward Williard ("Williard"), a BB&T commercial insurance agent, about purchasing business insurance which included workers' compensation insurance. (ECF No. 183–2 at 96–97.) When KC Transport first approached BB&T about procuring workers' compensation insurance, BB&T alleges KC Transport was interested in taking a coal hauling job in Virginia but ultimately chose not to accept this job. (ECF No. 184 at 3.)

On May 1, 2014, Williard traveled to KC Transport's headquarters in Virginia to discuss its workers' compensation coverage. (*Id.* at 97.) On that same day, Compton, on behalf of KC Transport, worked with BB&T's representatives to fill out a document which served as an application for workers' compensation coverage (hereafter the "Workers' Compensation Application"). (ECF No. 185–1.) Compton provided factual information about KC Transport's business to Rena Rickey ("Rickey"), a BB&T account manager, for the purposes of filling out this

2

Workers' Compensation Application. (ECF No. 184 at 4.) The application listed KC Transport as having one location in Bluefield, Virginia; as applying for workers' compensation coverage in the State of Virginia; and as having four driver employees whose "majority driving state" was Virginia and who performed local hauling only. (*Id.* at 4–5; ECF No. 185–1 at 1.) The Workers' Compensation Application also contained an "Applicant's Statement" section which was signed by Compton on behalf of KC Transport. (ECF No. 184 at 5.) The Applicant's Statement required Plaintiffs to certify that the applicant had read and understood the questions and statements in the application and that the information contained in the application was true and accurate. (*Id.*) BB&T states that this Workers' Compensation Application was the only document signed by the parties which set out the parties' mutual understanding of KC Transport's workers' compensation needs and the expectation of what type of insurance KC Transport intended to purchase. (*Id.*)

After the application was completed, BB&T submitted it to the National Council on Compensation Insurance ("NCCI") for placement in the assigned risk market, and LM Insurance was selected by NCCI to provide the policy. (*Id.* at 6.) LM Insurance subsequently issued the LM Insurance Policy for the period of May 1, 2014 to May 1, 2015 which included workers' compensation insurance coverage for Virginia. (*Id.*; ECF No. 183–6 at 1.) Compton never read this insurance policy and doubted that anyone at KC Transport ever read it either. (ECF No. 183–2 at 93, ¶ 12.)

Further, on November 6, 2014, KC Transport contracted with Hampden Coal, LLC and its affiliates, which included Blackhawk Mining, to haul coal and other materials in West Virginia. (ECF No. 184 at 7.) In December of 2014, BB&T alleges a representative of Blackhawk Mining

3

corresponded with account manager Rickey and stated that the company required it to be listed as an additional insured on the LM Insurance policy and further requested that the policy include a waiver of subrogation. (ECF No. 183–9 at 4.) Rickey advised that the insurance company needed to see a signed document currently in place which required that language. (*Id.*) In response, the Blackhawk representative sent the contract that was executed between KC Transport and Hampden Coal, LLC, (hereafter the "Coal Haul Agreement"), and Rickey forwarded the contract to LM Insurance so it could issue the endorsement. (ECF No. 184 at 8.) Rickey never read the Coal Haul Agreement. (*Id.*) BB&T argues she did not read the contract because neither Blackhawk nor KC Transport gave her permission to review it. (*Id.*) On the other hand, Plaintiffs state that the Coal Haul Agreement was provided to BB&T for the purpose of ensuring that is coal hauling operations in West Virginia were covered. (ECF No. 186 at 2.) When this Agreement was forwarded to BB&T, Plaintiffs state they expected BB&T to provide any additional coverage that the Agreement required. (*Id.* at 3.)

Further, the LM Insurance policy was subsequently renewed for the period of May 1, 2015 to May 1, 2016. (ECF No. 66 at 3, ¶ 10.) KC Transport operated solely in West Virginia during this time. (ECF No. 186 at 3.) BB&T states it was not aware that KC Transport had any West Virginia employees until October 7, 2015, when BB&T received notice of a workers' compensation claim. (ECF No. 184 at 9.) BB&T submitted a change request to LM Insurance that same day. (*Id.*)

    B. *Procedural History*

On July 30, 2018, Plaintiffs filed their Amended Complaint alleging the following claims against Defendants: (1) declaratory judgment on Plaintiffs' insurance policy with LM Insurance;

4

(2) breach of contract against LM Insurance; (3) common law bad faith against LM Insurance; (4) violation of the West Virginia Unfair Trade Practices Act ("WVUTPA") against LM Insurance; (5) estoppel against LM Insurance and BB&T; (6) reasonable expectation against LM Insurance and BB&T; (7) negligence against BB&T; (8) breach of contract against BB&T; (9) breach of fiduciary duty against BB&T; (10) failure to procure against BB&T; (11) declaratory judgment on Plaintiffs' insurance policy with Selective Insurance; (12) breach of contract against Selective Insurance; (13) common law bad faith against Selective Insurance; and (14) violations of the WVUTPA against Selective Insurance. (*See* ECF No. 66.)

On April 13, 2018, Selective filed a motion to bifurcate the breach of contract claims from the bad faith claims and to stay further proceedings on the bad faith claims pending resolution of the breach of contract claims, to which LM Insurance and BB&T joined. (*See* ECF No. 31; *see also* ECF Nos. 36, 39.) In an order dated July 30, 2018, this Court granted the motion and stayed further proceedings, including discovery, in connection with the bad faith claims. (ECF No. 65.) The order further stayed Plaintiffs' claims against BB&T. (*See id.*)

On August 6, 2019, the Court granted summary judgment in favor of LM Insurance on Count I and Count II of the Amended Complaint and granted summary judgment in favor of Selective on Count XI and XII of the Amended Complaint. (ECF No. 155.) The Court further lifted the stay on Plaintiffs' claims against BB&T and Plaintiffs' extracontractual claims against LM Insurance and Selective Insurance. Subsequently, Defendants LM Insurance and Selective were dismissed from this action. (ECF No. 159.)

On March 9, 2020, BB&T filed its Motion for Summary Judgment. (ECF No. 183.) Plaintiffs timely responded, (ECF No. 190), and Defendant replied, (ECF No. 195). Additionally,

5

Plaintiffs filed their respective Motion for Summary Judgment. (ECF No. 185.) Defendant timely responded, (ECF No. 191). Plaintiffs did not file a reply. Further, on October 28, 2020, the Court ordered additional briefing on the alleged contract that existed between the parties. (ECF No. 218.) Both Plaintiffs and BB&T filed supplemental briefing. (ECF Nos. 219, 220.) Only BB&T issued a reply. (ECF No. 221.) As such, both motions are fully briefed and ripe for adjudication.

## II.   LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating such factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. DISCUSSION

Cross-motions for summary judgment are reviewed separately if material facts are in dispute. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). Plaintiff's Amended Complaint alleges the following claims against BB&T: Count V for estoppel; Count VI for reasonable expectation; Count VII for negligence; Count VIII for breach of contract; Count IX for breach of fiduciary duty; and Count X for failure to procure. (*See* ECF No. 66.) Plaintiffs move for summary judgment on Count X for failure to procure. BB&T moves for summary judgment on Count VII for negligence; Count VIII for breach of contract; and Count IX for breach of fiduciary duty.

#### A. Breach of Fiduciary Duty

BB&T argues Plaintiffs' Count IX claim for breach of fiduciary duty is barred by Virginia's statute of limitations.[1] (ECF No. 184 at 17.) Plaintiff does not respond. "Under

---

[1] In a prior Memorandum Opinion and Order, this Court determined that Virginia law applied to Plaintiffs' claims against both Defendants LM Insurance and Selective. (ECF No. 155 at 9, 21.) Further, the parties do not dispute that Virginia law should also be applied to Plaintiff's claims against BB&T. (ECF No. 184 at 11; ECF No. 190 at 4–5.) Accordingly, the Court **FINDS** that Virginia law applies here.

7

Virginia law, a breach of fiduciary duty claim is subject to the two-year period of limitation set forth in Virginia Code § 8.01–248. The two-year period begins to run 'at the time of the breach,' rather than the date on which the breach is discovered." *White v. BB&T Ins. Servs., Inc.*, No. 7:10CV00467, 2012 WL 3018048, at *4 (W.D. Va. July 23, 2012); *see also Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 424 (E.D. Va. 2011).

Here, Plaintiffs allege BB&T breached its fiduciary duty by "failing to procure insurance coverage for KC Transport's business operations in West Virginia, including its contractual obligations." (ECF No. 66 at 18, ¶ 119.) Considering these allegations, the statute of limitations began to run in May of 2014 when the incorrect insurance policy was procured. Because this action was filed on January 2, 2018, well over three years later, Plaintiffs' claim for breach of fiduciary duty is barred. Further, even if the statute of limitations began to run in December of 2014 when BB&T received the Coal Haul Agreement from the Blackhawk Mining representative, this claim would still be barred. Accordingly, summary judgment is **GRANTED** for BB&T on Plaintiffs' Count IX claim for breach of fiduciary duty.

B. Application of Virginia Tort or Contract Law

Next, BB&T argues that its duties to Plaintiff arise under the law of contract, not tort. (ECF No. 184 vat 13.) Plaintiffs counter and argue their claims are based in both contract and tort. (ECF No. 190 at 5.) Under Virginia law, "[t]he question of liability for negligence cannot arise at all until it is established that the man who has been negligent owed some duty to the person who seeks to make him liable for his negligence . . . ." *Dudley v. Offender Aid & Restoration of Richmond, Inc.*, 401 S.E.2d 878, 882 (Va. 1991) (quotations omitted). A tort is defined as follows:

8

> The word "tort" has a settled meaning in Virginia. "A tort is any civil wrong or injury; a wrongful act (not involving a breach of contract) for which an action will lie."
>
> "Tort" is also defined as the violation of some duty owing to the plaintiff imposed by the general law or otherwise. Generally, the "duty must arise by operation of law and not by mere agreement of the parties." Stated differently, a "tort" is a "legal wrong committed upon the person or property independent of contract."

*Glisson v. Loxley*, 366 S.E.2d 68, 67 (Va. 1988) (citations omitted), superseded by statute on other grounds, 1993 Acts ch. 928 (codified as amended at Code § 8.01-581.2). "In determining whether a cause of action sounds in tort, contract, or both, 'the source of the duty violated must be ascertained.'" *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 254 (Va. 2019) (quoting *MCR Fed., LLC v. JB & A, Inc.*, 808 S.E.2d 186, 192 (Va. 2017)).

Further, the Supreme Court of Virginia has distinguished between tort and contract actions as follows:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

*Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) (quoting *Oleyar v. Kerr, Trustee*, 225 S.E.2d 398, 399–400 (Va. 1976)). Thus, "[t]o avoid turning every breach of contract into a tort, . . . we have consistently adhered to the rule that, in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *MCR*, 808 S.E.2d at 193. In other words, "[a] tort action cannot be based solely on a negligent breach of contract." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998).

Here, the source of BB&T's alleged duties to Plaintiffs are alleged to arise from the contract between the parties. Plaintiffs assert claims of estoppel, reasonable expectation, negligence, breach of contract, and failure to procure against BB&T for BB&T's failure to procure West Virginia workers' compensation insurance coverage. BB&T's alleged duty to procure this coverage is not a duty that arises from the relationship between the parties, regardless of a contract.[2] *Richmond Metropolitan Authority,* 507 S.E.2d at 347 ("If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.").

Plaintiffs are correct that Virginia law allows claims to exist under tort, contract, or both, but the facts of this case do not support a breach of duty arising in tort because the alleged duty breached is not a common law duty and exists only because of the contract between the parties. *See MCR*, 808 S.E.2d at 192–93 ("In determining whether a cause of action sounds in tort, contract, or both, 'the source of the duty violated must be ascertained.' In certain circumstances, a single act or occurrence can support causes of action for both breach of contract and for breach of a duty arising in tort."). As the Supreme Court of Virginia held in *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (Va. 1991), a plaintiff cannot "establish a tort action based solely on the negligent breach of a contractual duty with no corresponding common law duty." Further, "[t]he law of torts provides redress only for the violation of certain common law and statutory duties involving

---

[2] In their supplemental briefing, Plaintiffs state that it is undisputed that no written contact existed but argue that BB&T's alleged duties were based on "the mutual understanding of the parties as to offer, acceptance, and consideration." (ECF No. 220 at 2.) Plaintiffs further argue that BB&T "breached the parties' contract" when it failed to procure West Virginia workers compensation insurance coverage." (*Id.* at 4.) Thus, Plaintiffs rely on an alleged contract between the parties and contract principles as the basis for BB&T's duty.

10

the safety of persons and property, which are imposed to protect the broad interests of society." *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004). Plaintiffs have not alleged that BB&T breached any common law or statutory duty independent of alleged BB&T's contractual duty to procure insurance. Accordingly, Plaintiffs' claims must arise under Virginia's law of contract, not tort.[3] Accordingly, summary judgment is **GRANTED** for BB&T on Plaintiffs' Count VII claim for negligence.

### C. Breach of Contact

BB&T moves for summary judgment on Plaintiffs' breach of contract claim. "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). On October 28, 2020, the Court ordered the parties to provide further briefing on the alleged

---

[3] In opposition, Plaintiffs argue Virginia has recognized a common law tort duty for an insurance broker' failure to procure insurance. (ECF No. 190 at 6.) Plaintiffs appear to base this argument on the following quote from District Court for the Western District of Virginia's decision in *White v. BB&T Ins. Servs., Inc.*, No. 7:10CV00467, 2012 WL 3018048, at *5 (W.D. Va. July 23, 2012):

> [a]n action against an agent or broker for failure to properly procure insurance coverage can generally be brought either as a negligence action or as an action for breach of a contract to procure insurance, and the theory on which the action is brought will ordinarily make little or no practical difference for the purpose of establishing a prima facie case.

*Id.* at *10 (emphasis added) (quoting *Stewart v. W. Va. Employers' Mut. Ins. Co.*, No. 2:07–0168, 2007 U.S. Dist. LEXIS 89377, at *10, 2007 WL 4300595 (S.D. W. Va. Dec. 5, 2007)). Essentially, Plaintiffs are arguing that the district court in *White* created a new common law tort duty under Virginia law, based on a quote from a federal district court in West Virginia. This argument is a stretch, to say the least. When confronted with this exact argument, the Eastern District of Virginia stated that "[t]he Supreme Court of Virginia has never recognized the existence of a separate tort duty that an insurer owes to its insured. . . ." *Selective Ins. Co. of the Se. v. Williamsburg Christian Acad.*, 458 F. Supp. 3d 409, 416 (E.D. Va. 2020) (quoting *Metro. Life Ins. Co. v. Gorman-Hubka*, No. 1:15-CV-1200, 2016 WL 10489865, at *3 (E.D. Va. Mar. 28, 2016)). "[T]o the contrary, the Supreme Court of Virginia has held that an insurance agent 'did not have a common law duty to the [insured] arising out of the parties' dealings' and that '[t]he law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property . . . .'" *Metropolitan Life Insurance*, 2016 WL 10489865, at *3 (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). Accordingly, Plaintiffs' argument is not supported by Virginia law.

contract between the parties. In their supplemental briefings, the parties each state that it is undisputed that no written contract existed between the parties. (ECF No. 219 at 1; ECF No. 220 at 1.) Despite the nonexistence of a contract, Plaintiffs argue that BB&T breached the parties' contract. (ECF No. 220 at 4.) Plaintiffs argue that BB&T's offer to procure workers' compensation insurance for Plaintiffs coal haul contracts and BB&T's failure to procure coverage in West Virginia after receipt of the Coal Haul Agreement created the alleged breach. (*Id.*) However, Plaintiffs fail to make clear how a contract can be breached when a contract was never executed.

Further, Plaintiffs neither claim that an oral contract existed nor can they point to a single incidence where BB&T made any express promise to procure this type of coverage for Plaintiffs. Plaintiffs instead rely on the fact that BB&T did procure the wrong type of workers' compensation coverage as evidence that BB&T had a legal obligation to procure the correct type of coverage. Considering the well–established principles of contract law, Plaintiffs' argument makes no sense. A breach of contract claim requires evidence of "a legally enforceable obligation of a defendant to a plaintiff." *Filak*, 594 S.E.2d at 614. At this stage of the proceeding, Plaintiffs are required to produce more than vague allegations of alleged obligations undertaken by BB&T. Plaintiffs must provide evidence of the makings of a contract, its terms, and the consideration for the promise. Quite simply, Plaintiffs have provided no evidence that there was a meeting of the minds between the parties as to the essential terms and provisions of a contract. Here, Plaintiffs have failed to even allege that they paid BB&T for their services or exchanged any type of consideration for the alleged promises offered by BB&T. "Absent consideration there is no enforceable contract and thus no cause of action." *Filak v. George*, 58 Va. Cir. 500, 505, 2002 WL 31431890 (Chesterfield

Cty. Cir. Ct. 2002). Thus, Plaintiffs' breach of contract claim must fail. Accordingly, the Court **GRANTS** summary judgment for BB&T on Plaintiffs' Count VIII claim for breach of contract.

### D. Failure to Procure

Finally, Plaintiffs move for summary judgment on their claim for failure to procure. It is not clear from the Amended Complaint or summary judgment briefing whether Plaintiffs seek to recover under contract, fraud, or tort theory. However, there are no allegations of fraud and the Supreme Court of Virginia's opinion in *Gen. Ins. of Roanoke, Inc. v. Page,* 464 S.E.2d 343 (1995) bars recovery against an agent for negligent failure to procure where, as here, the insured failed to read the insurance policy. As in *Page*, Compton never read the insurance policy and she doubted "very seriously" that anyone at Plaintiffs' business read it either. (ECF No. 183–2 at 93.) Thus, Plaintiffs' failure to procure claim can exist only under a contract theory.

Here, Plaintiffs argue that BB&T breached the alleged contract between the parties because it failed to procure the correct workers' compensation coverage. As discussed above, Plaintiffs have provided no evidence of a contract between the parties and provided no evidence that BB&T undertook any obligations or made any promises to Plaintiffs. As stated above, the fact that BB&T did procure the wrong type of workers' compensation coverage cannot be used as evidence to support an alleged legal obligation to procure the correct type of coverage. As a result, Plaintiffs' failure to procure claim must fail for the same reasons as their breach of contract claim. Accordingly, the Court **GRANTS** summary judgment for BB&T on Plaintiffs' Count X claim for failure to procure.

## IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion and **DENIES** Plaintiffs' Motion. For clarity, the Court summarizes its holding as follows: summary judgment is **GRANTED** for BB&T on Plaintiffs' Count VII claim for negligence; Count VIII claim for breach of contract; Count IX claim for breach of fiduciary duty; and Count X claim for failure to procure. Plaintiffs' motion is denied in its entirety. Further, neither party moved for judgment on Plaintiffs' Count V claim for estoppel or Count VI claim for reasonable expectation. Accordingly, both claims remain.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     January 26, 2021

_____
THOMAS E. JOHNSTON, CHIEF JUDGE